THOMAS P. SAFFOLD, plaintiff in error, *vs.* JAMES A. WADE, executor, defendant in error.

1. Where the verdict is against both of the defendants sued, and finds one of them to be security only, a judgment entered up against "the defendant," is to be construed as including both, the omission of the letter "s" at the termination of the word *defendant*, being an immaterial clerical error. The judgment is not void by reason of failing to describe the security as security, but is amendable.

2. Where, upon an execution against both defendants, the sheriff entered a levy, in due time, as made upon the property of one, (naming him,) the entry kept the judgment from becoming dormant as to either, for seven years from the date of the levy.

3. After such a levy had been disposed of by selling the property and paying out the proceeds to older *fi. fas.*, it was competent, by leave of the court, to amend the judgment by inserting therein the letter "s" and the name of one of the defendants as principal, and the name of the other as security, so as to make the judgment, in that respect, conform to the verdict. And it was competent, by like leave of the court, at the same time, to amend the *fi. fa.* by designating therein one of the defendants as principal and the other as security, thus making the *fi. fa.* conform to the judgment as amended.

4. It was no obstacle to making these amendments that an affidavit of illegality, interposed by the security, had previously been sustained, and a levy upon his property dismissed, the grounds of illegality insisted upon being the variances between the verdict and the judgment, and between the judgment and the *fi. fa.*, which the amendments served to obviate.

5. Such amendments were favorable to the security, being chiefly in respect to matters intended by the law for his benefit. They were, moreover, warranted by the record, which imports absolute verity. That they were made without notice to him is, consequently, nothing to his prejudice. Before they were made, he complained by affidavit of illegality, of the defects which they remedied, and, by so doing, virtually demanded the correction of said defects, the same being amendable.

6. As between the parties to the action, amendments to the judgment and *fi. fa.*, made to establish conformity in the whole record, relate back, gen-

Saffold *vs*. Wade.

erally, and for most purposes, to the original dates, and take effect therefrom.

7. After a proper order to amend a judgment and *fi. fa.*, it is not requisite to enter a new judgment or issue a new *fi. fa.*

8. Affidavit of illegality by the security being made, upon the grounds that no legal judgment was entered, that the verdict and judgment were dormant, and that no legal execution was issued, was properly overruled—the levy and the affidavit of illegality being subsequent to the proceedings and amendments indicated in the foregoing notes, and within two years after the levy on the principal's property referred to in note second.

Judgments. Verdict. Amendment. Principal and security. Illegality. Before Judge BARTLETT. Morgan Superior Court. September Term, 1875.

Reported in the opinion.

McCAY & TRIPPE; A. G. & F. C. FOSTER, for plaintiff in error.

BILLUPS & BROBSTON, for defendant.

BLECKLEY, Judge.

1. The verdict of the jury was against both of the defendants. The suit was upon a promissory note signed by both, apparently as principals, but one of them seems to have made proof of his suretyship for the other, and the jury found that he was security only. He is the plaintiff in error. In signing judgment upon the verdict, neither of them was named, the judgment being simply against " the defendant." Execution issued against both defendants, and as the verdict was against both, the judgment was, no doubt, intended to be, and should be so construed. The omission of the letter *s* was, we think, a clerical error, and wholly immaterial. If it had been the purpose to sign judgment against one defendant only, the one intended would have been named. The word *defendant* applies equally to each, and may include both. Even in statutes, the singular may stand for and represent the plural: 4 *Georgia Reports*, 399. The verdict subjected both defendants alike to pay the debt, and it violates every principle

of probability to suppose that the judgment was intended to embrace one only. The plain and obvious truth is, that by mistake, the word *defendants* was written *defendant*. It was a more grave matter not to have described the security as such in the judgment, but as he did not sign the note in that character, it is possible that the Code, sections 2159, 3572, does not require it. Comparing the terms of these two sections with themselves and with the prior statutes (Cobb's Digest, pages 598, 600,) I am inclined to think it does not; more especially, as sections 2165 and 2166 seem to treat the creditor as altogether disinterested in the question of suretyship, where the fact does not appear on the face of the contract. But, in any event, the omission did not make the judgment void. It is, at most, an irregularity, and was amendable. See 26 *Georgia Reports*, 162; 27 *Ibid.*, 353; 53 *Ibid.*, 387; 54 *Ibid.*, 494.

2. The execution being against both defendants, was levied upon the principal's property in less than seven years after the judgment was rendered. That kept the judgment from becoming dormant for seven years longer: Code, section 2914; 10 *Georgia Reports*, 184. The levy was entered by the sheriff, the officer authorized by law to execute and return the writ, and that preserved the vitality of the judgment against both defendants. The case in 13 *Georgia Reports*, 269, does not conflict with this ruling, for in that case the last entry was more than seven years old when the *fi. fa.* was re-levied, and the circumstance relied upon to prevent dormancy was litigation upon a bill in chancery to which the co-defendant in the *fi. fa.*, who claimed that the judgment had become dormant was no party. Here the requisites of the statute were literally fulfilled; there was an entry in due time by the proper officer.

3. The property levied upon was sold, and the proceeds distributed to older *fi. fas.*, after which the amendments were made which are indicated in the third head-note.

4. Before they were made, however, the *fi. fa.* had been levied upon the property of the security (now the plaintiff in

Saffold *vs*. Wade.

error,) who filed an affidavit of illegality on the grounds of variance between the verdict and judgment, and between the judgment and *fi. fa.*, and on the further grounds that the debt was created for slaves, and that an issue tendered by the principal under the relief laws was yet undisposed of. The last two grounds were not insisted upon in the argument here as of any value. On the trial of the affidavit of illegality it was sustained, and the levy was dismissed by the court. The plaintiff then, at the same term of the court, procured the passage of orders to make the amendments in question, and they were made. It is insisted that it was not competent to make the amendments after the illegality was sustained, and that the judgment pronouncing the execution illegal is still unreversed, wherefore the execution stands condemned, down to the present time, as illegal. But the only grounds of illegality now insisted upon as effective were those which complained of the very defects which the amendments remedied. The judgment was not void—it was amendable by law ; and no judgment with any life in it can be slain by an affidavit of illegality. So, too, the *fi. fa.* was, at most, only irregular—it was not void—it was amendable. An affidavit of illegality cannot destroy a *fi. fa.*, any more than a judgment, for irregularity. All it can do is to obstruct its enforcement until the irregularity shall be cured by amendment, or until it shall be too late to amend. Between a prior affidavit of illegality based on irregularities, and subsequent rectification of those irregularities by amendment, is the most perfect consistency. And the judgment sustaining such an affidavit is conclusive of but one thing, to-wit : their then existence as legal obstacles to the enforcement of the *fi. fa.* If such obstacles are once formed and adjudicated upon, are they thereby rendered fixed and permanent? Surely not. On the contrary, after such a demonstration of their existence and of the necessity for removing them, they should be removed at once; and that was done in this case.

5. It is urged that the amendments were void because made without notice to the security. All of them, except

adding the letter *s* to the word defendant, which was quite useless and unnecessary, were favorable to his interest and intended by the law for his benefit. What cause could he have shown against them ? They were based on no extrinsic evidence, but were warranted by the record itself. There was nothing to do but inspect the record and order accordingly : 1 *Kelly*, 559; 3 *Ibid.*, 121. His liability for the debt was already fixed by the verdict and by the judgment as rendered. Nothing was added to that liability by the amendments. Besides, he had resisted the enforcement of the *fi. fa.* because of these defects, and they being, in law, amendable, his affidavit of illegality setting them up and insisting upon them, may well be deemed a demand, on his part, for their correction. The plaintiff merely responded to that demand by moving the amendments after they had, at his instance, been adjudged necessary.

6. The amendments, when made, related back, as between the parties, and for most purposes, to the original dates of judgment and *fi. fa.:* 5 *Georgia Reports*, 251; 11 *Ibid.*, 281 ; 13 *Ibid.*, 218 ; 18 *Ibid.*, 287.

7. It was not requisite to enter a new judgment or issue a new *fi. fa.* Dormancy of the judgment did not, therefore, result from making the amendments after the lapse of seven years from the date of the judgment. The benefit to the plaintiff of the entries on the *fi. fa.* were not lost, as means of preventing dormancy. In whatever mode the amendments were made, the identity of the originals would not be destroyed as long as, with the aid of the orders authorizing amendment, the difference between the former and the present reading could be accurately shown. The record before us will bear this test, as it contains a copy of the judgment and *fi. fa.* as they were before amendment, and a copy of what they became by amendment. No authority was produced to us in the argument on the precise point as to how amendments should be made ; that is, how the new matter should be combined with the old. Doubtless, some little research among books of practice would lead to satisfactory rulings on the

subject. We find one decision on amending pleadings in equity in 25 *Georgia Reports*, 634, which holds that an order to amend does not, of itself, operate as an amendment. It also points out how bills are amended, but in such brief terms as to be scarcely perspicuous. In 35 *Georgia Reports*, 207, instead of amending the *fi. fa.* it was quashed, and a new one ordered to issue, but there was no motion to amend the *fi. fa.*, the *judgment* only being the subject of that motion.

8. The illegality now under review was an affidavit filed by the security in resistance to a second levy made upon his property, which levy was after all the foregoing proceedings and amendments took place. It was, however, within two years after the levy on the principal's property, referred to under the second head of this opinion. Some of the grounds of illegality are not stated with entire clearness, but the substance of them all is comprehended in these propositions: that no legal judgment was entered; that the verdict and judgment are dormant; and that no legal execution has issued. The court below overruled the affidavit, and that is the error complained of. After what has been said, our reasons for affirming the judgment are apparent. We think all possible irregularity had been eliminated from both the judgment and *fi. fa.;* that the judgment was not dormant, and that the execution, as amended, was valid. Let it proceed.

Judgment affirmed.