## JONES *vs.* HAWKINS.

[This case was argued at the last term and the decision reserved.]

1. Proof of debt in the bankrupt court by the judgment creditor against the principal, without an express reservation of the lien of the judgment, will discharge the lien of the judgment ; and the accommodation indorser or surety is discharged to the extent of the injury he thereby receives.

2. If there be older liens, valid and operative, and pressed upon the bankrupt's property, of amount sufficient to consume and exhaust it all, then the indorser is not injured, nor is he exposed to greater liability, nor is his risk increased, and, hence, he is not discharged ; and proof of the foregoing facts is admissible to show that he is not hurt by the proof of the debt in the bankrupt court.

3. If a *fi. fa.* be amended after levy, the levy falls ; but if the order granting leave to amend, be not carried out, and the *fi. fa.* proceed without amendment, it does not.

4. If the surety assent to the application of funds arising from the sale of the principal's property to junior liens, and receives part of the money himself, he is not discharged by such application.

5. An indorser, who is the counsel of the principal debtor in obstructing the collection of the debt by the creditor from the principal's property, in every phase of the litigation between the judgment creditor and the principal, is not within the reason and spirit of the law which discharges sureties from liability by reason of the acts of the creditor, which injure the surety. or increase his risk, or expose him to greater liability when the acts of the creditor complained of grew directly out of the litigation conducted by the indorser, as counsel for the principal.

Bankruptcy. Indorsement. Liens. Levy and sale. Executions. Attorney and client. Before Judge CLARK. Schley Superior Court. April Term, 1877.

Reported in the opinion.

B. P. HOLLIS; J. T. WILLIS, for plaintiff in error.

W. A. HAWKINS; N. A. SMITH; C. F. CRISP; B. B. HINTON, for defendant.

JACKSON, Judge.

Jones recovered a judgment against Burton, principal, and Hawkins, indorser or surety, and levied the *fi. fa.* issuing thereon upon Hawkins' property. The latter filed an affidavit of illegality thereto on various grounds therein alleged, and, on the trial thereof, the jury found for the defendant, Hawkins. Jones moved for a new trial on various grounds set out in the motion; the motion was overruled on all the grounds, and Jones appealed to this court.

1. Burton went into voluntary bankruptcy, and one of the grounds taken in the affidavit of illegality is that Jones proved his debt in bankruptcy, and thereby lost the lien of the judgment on the property of the bankrupt—the judgment being obtained prior to 1868—and as Hawkins was entitled to the use of the judgment to reimburse himself when he paid Jones, he was hurt and discharged.

On this point the court charged the jury to the effect that if the plaintiff did prove his debt in bankruptcy, and the

judgment was dated in 1867, he thereby surrendered the lien of his judgment on all of Burton's property, and if Burton's property was set apart as homestead and exemption, the same was discharged from the lien of the judgment, and if the proving the debt was without Hawkins' consent, he was discharged. Error is assigned on this charge, and this seems to be a controlling question in the case.

There can be scarcely a doubt that if Jones proved his debt in the bankrupt court, without reservation of his lien, he thereby lost the lien of his judgment. Bump on Bankruptcy, 96, 726 ; 55 *Ga.*, 579 ; 56 *Ga.*, 271.

But the court charged the jury that, in that event, Hawkins, the surety, was discharged, and the question is, was Hawkins discharged thereby ? We think that this depends upon the extent of the damage he sustained by the loss of the lien of the judgment ; if he was not thereby damnified at all, if he suffered no loss at all, then he is relieved from no part of this debt ; if he suffered loss, then he is relieved to the extent of his loss. Certainly Hawkins is hurt no worse than he would have been if there had been a levy upon personal property, and that levy dismissed. And in that event he would have been hurt only to the value of the property relieved from levy—3 *Kelly*, 405; 51 *Ga.*, 209; Code, §3658 ; 55 *Ga.*, 374 ; 56 *Ga.*, 609. If the levy were upon land and were dismissed, then he would not have been hurt at all, for the land would be still on hand to be levied on again by the surety, if he paid off the *fi. fa.* and took control of it—14 *Ga.*, 77 ; 22 *Ga.*, 385. So in this case. If Jones so acted as to occasion loss to Hawkins, then Hawkins is injured to the extent of that loss or damage, and to that extent he is relieved, but not beyond it. This is no novation of a contract whereby the surety or indorser is discharged whether hurt or not. Code, §2153 ; 51 *Ga.*, 209. But it is an act of the creditor after judgment, which will only discharge the surety if he is injured, or his risk is increased, or if he is exposed to greater liability. Code, §2154. And

such an act we have seen relieves the indorser only to the extent of the hurt, and if he be not hurt at all, then he is not released or discharged at all. If other and older liens would have got the whole exempted property (all of the principal's property being exempted), then it is clear that Hawkins would have incurred no greater risk, nor would he have been exposed to any greater liability, nor been at all injured. And hence, in such a contingency he would not be discharged. It follows that the charge of the court was too broad, and upon it the jury were obliged to find for the surety whether hurt or not.

2. It follows, too, that testimony about the other liens, their dates, amounts, and the fact of their being pressed upon the exempted property of the principal debtor, should have gone to the jury. If they were valid, subsisting judgments, of older date than Jones', and were pressed, or could be enforced upon the bankrupt's exemption and homestead, which were liable to them as well to Jones' judgment, and of amounts sufficient to exhaust all the bankrupt's estate so relieved from Jones' lien, then Hawkins was not hurt, and is not discharged. If the court excluded such evidence, it erred in excluding any of it from the jury.

3. Another ground of illegality is, that Jones had leave, by order of court, to amend the *fi. fa.*, and a levy on personalty thereby fell, and Hawkins was relieved or discharged to that extent. But it seems doubtful that the amendment was actually made: if it was actually made, and not merely leave obtained to have it made, then the levy fell; but if it proceeded unamended, and the indorser was not hurt, because the levy did not fall, but still stood, then the indorser is not discharged. To take an order for leave to amend is one thing; to amend in pursuance of such an order is another thing. 25 *Ga.*, 634; 56 *Ga.*, 174.

4. Another ground was in respect to the disposal of funds raised from the principal's property, and applied to junior liens of the creditor, Jones; but it appears that this was done by Hawkins' consent, and that he got a part thereof. If

so, as the court charged, he is estopped from complaining.

5. Another point of importance remains to be considered. Hawkins was the attorney of Burton in procuring his discharge in bankruptcy, and the question arises, how does this fact operate upon his right to plead his release from Jones' act in proving his judgment debt there? Hawkins was present and saw it done, he managed the whole case for Burton, and procured, as counsel, that to be done which he says released him as surety. Can a surety who for payment to himself of wages for services rendered to his principal in the very act which hurt him as surety, even if he was hurt, plead the act he himself did in one capacity, to release him from the debt he owed in another? It does not look sound. Whilst there is nothing immoral in what he did as counsel, yet he does not come into court in such manner as entitles him to claim *stricti juris* as his measure of right. He cannot be termed an innocent surety, for he himself procured the discharge of his own principal, and was paid by his principal for procuring it. He ought to be estopped from pleading the act he did, or counseled, and advised, and procured to be done by the principal. It is the discharge in bankruptcy which Hawkins obtained for Burton which released Burton's property from this debt; and it would seem right for Hawkins to pay what his own act prevented Burton from paying, or *enabled* Burton not to pay.

It is true that if Jones had not undertaken to prove his debt in bankruptcy, the mere discharge of Burton would not have affected his right to use the judgment against the property of Burton; and, therefore, the act of Hawkins in procuring the discharge did not, *by itself*, release the property of Burton from the judgment of Jones; but it did contribute to it materially; it was the act without which Hawkins would never have been called upon to pay this debt, or had his property levied upon therefor. It is to be observed, too, that Hawkins was the counsel of Burton in all this litigation with Jones, of Mrs. Burton, of the securities, Montgomery and another, on the forthcoming bond when Burton

made the relief affidavit; and the case presented is that of a surety opposing all the efforts of the creditor to collect his debt from the principal, and then asking to be discharged, when he, himself, had protected the principal's property from paying the debt.

Besides, it is semewhat doubtful how Jones proved his debt, so far as the record discloses the facts—whether in the mode which reserved and preserved his lien, or in the common form, without a reservation of the right to enforce it. If in the former mode, he can still go upon Burton, and Hawkins then is not hurt at all. This completes the view we take of the law of this case upon all the substantial points made in this voluminous record. The case has been held up with a sincere desire to reach a satisfactory and just conclusion upon all the points made; and that conclusion constrains us to reverse the judgment and grant a new trial for the reasons and upon the grounds hereinbefore indicated. The fact that Hawkins has received, so far as we can see, no actual damage from any act of Jones, and the fact that he, himself, counseled and procured the very thing which increased his risk, if increased in the least, are the controlling reasons which lead our minds to this conclusion.

Judgment reversed.