## FREEMAN, executor, *vs.* BIGHAM.

1. The evidence is conflicting, and a new trial will not be awarded on the ground that the verdict is contrary thereto.
2. While one party to a cause of action may testify as to a contract between himself and the agent of the other within the scope of the latter's agency, although the principal be dead, the agent being alive and able to confront him, yet he may not testify to mere statements of the deceased repeated to him by the agent touching a past contract between the principals.
   (*a*). Nor does it alter the case that the agent subsequently became the executor of the deceased and a party to the suit. He was not a party to the contract.
3. The contract between the indorser and payee of a promissory note is distinct from that between the payee and the maker. Therefore in a contest between the indorser and payee, which could not in any

way affect the liability of the maker, he was not rendered an incompetent witness by the death of the payee.

4. Where one indorsed a promissory note, to be liable in the second instance, and subsequently became the attorney of the holder in endeavoring to secure payment from the maker, and in a suit on his indorsement pleaded a release from liability, letters from him to his client which were otherwise admissible, were not rendered inadmissible, by the fact that they related to an effort to effect a compromise between the client and the principal debtor. To exclude them as relating to a compromise it must be one in which the writer was interested.

5. The relation of attorney and client is eminently one of trust and confidence. Where the attorney to collect a debt from the principal debtor was himself liable in the second instance, the statute of limitations as to his liability ran from the time when the debt could not be collected from the principal, and when the liability of the attorney was made apparent to the client.

(*a*). While the client was bound to ordinary diligence to discover the insolvency of the principal debtor, he was entitled to the diligence, knowledge and advice of his attorney on that subject.

(*b*). The testimony stated in the second head-note was inadmissible for the further reason that it tended to show the *bona fides* of the witness in his relation as attorney for the deceased.

6. A letter written by one party to a suit for the purpose of effecting a compromise with the other, is not admissible in evidence.

7. The published volumes of supreme court reports do not furnish the highest evidence of the judgment of affirmance or rever al in a particular case. The *remittitur* is the best evidence thereof.

8. We find no material error in this case other than those specified above.

New Trial. Witness. Evidence. Attorney and client. Charge of Court. Before Judge BUCHANAN. Troup Superior Court. May Term, 1880.

Sterling, principal, and Sims, security made a promissory note to Neal or bearer, for $10,466.66, dated May 19th, 1860, due on January 1st, 1861. This note was indorsed as follows: " Indorsed the second instance only, and this note to be sued when due, without any delay, if not promptly paid. (Signed) Benj. H. Bigham." There were several credits not material here. Freeman, as exe-

cutor of Neal, brought suit on this indorsement, alleging the insolvency of the maker and security; that when the note fell due and was not paid, Bigham had due notice; that at his request, he being an attorney at law, and to enable him to protect his interest, the note was placed in his hands for collection; that he obtained judgment but failed to make the money, and allowed property of the defendant, Sterling, to be sold without any diligence in subjecting it; that Sterling became a bankrupt and Sims died insolvent; that the last piece of property from which any money could be realized was levied on in 1867, and collusively allowed to stand until 1873, when a claim was interposed by J. R. Sterling, which is still pending, but that there are older *fi. fas.* which will absorb all of the fund, if subjected, so that there is no probability of realizing anything therefrom.

The defendant raised two principal issues: first, that in consideration of his legal services in pressing the note against the principal and surety, he was released from his liability; and second, the statute of limitations.

The evidence was very conflicting. The jury found for the defendant on both pleas. Plaintiff moved for a new trial on the following, among other grounds:

(1). Because the verdict was contrary to law and evidence.

(2). Because the court erred in allowing Bigham to testify as follows:

"Freeman brought the note to me, to my office, early in June, 1861, for suit. After I had written the ordinary receipt for collection, Freeman reminded me of a contract I had made with Mr. Neal as to suing the note to judgment for the release of my liability as indorser, and requested me to add the words, 'I having agreed to sue the same without charge for professional services,' as he would like to have the receipt in accordance with Mr. Neal's instructions."

Plaintiff's counsel insisting, (1), that said testimony was

parol to vary the terms of the receipt; (2), that it was
the declaration of an agent not within the scope of his
agency; that it was permitting the declarations of the
deceased James Neal to be giveen in evidence by the
defendant, the other party to the contract, in his own
favor.

(3.) Because the court allowed Sterling, the maker of
the note, to testify as to the contract between Neal and
defendant, Neal being dead.

(4.) Because the court admitted in evidence letters
which passed between Neal and Bigham, and Freeman
and Bigham, concerning an effort to compromise the debt
against Sterling.

(5.) Because the court refused to admit a letter from
Bigham to Freeman which related to an amicable settle-
ment or compromise between them of the present claim.

(6.) Because the court refused to admit in evidence the
54th *Ga.*, pages 690–4.

(7.) Because the court refused to continue the case, or
to pass it until the determination of the claim case men-
tioned in the declaration.

(8.) Because the court charged that if Bigham became
the judge of the superior court, the relation of attorney
and client ceased while he was on the bench. (The evi-
dence disclosed the fact that he had been on the bench.)

The motion was overruled, and plaintiff excepted.

STEWART & HALL; D. N. SPEER; HOWARD VAN
EPPS; JAS. S. WALKER, for plaintiff in error, cited as fol-
lows:    On admission of letters, Code, §3789; 10 Barr.,
164; 48 *Ga.*, 642; 13 *Ib.*, 414.    On rejection of letter, 49
N. Y., 321; 6 *Ga.*, 213.    On competency of witness, Code,
§3854; 51 *Ga.*, 624; *Stanford vs. Murphy*, (September
term, 1879); 57 *Ga.*, 232; 60 *Ib.*, 535; 24 *Ib.*, 211; 32 Ib.,
72; 49 N. Y., 555; Story on Agency, 150; 58 *Ga.*, 494,
288.; 60 *Ib.*, 535; 37 *Ib.*, 118; 50 *Ib.*, 203; 61 *Ib.*, 147; 44
*Ib.*, 46, 58; 2 B. & A., 647, and notes.

FERRELL & LONGLEY; A. H. COX; T. H. WHITAKER; C. W. MABRY, for defendant, cited, on Sterling's testimony, 30 *Ga.*, 939; 19 *Ib.*, 203; 29 *Ib.*, 294; 18 *Ib.*, 746; 8 *Ib.*, 461, 462; 36 *Ib.*, 520; 45 *Ib.*, 147; 56 *Ib.*, 638; 1 Kelly 12; Code, §3806; 2 Gr. Ev., 519, 523. On admission of letters, 1 Greenleaf on Ev., §§192, 201; 1 Starkie on Ev., §158; 59 *Ga.*, 52; 13 *Ib.*, 406; 56 *Ib.*, 557; 41 *Ib.*, 186. On Bigham's testimony, 58 *Ga.*, 494; 56 *Ib.*, 639; 40 *Ib.*, 193; 58 *Ib.*, 479; 61 *Ib.*, 147; Code, §3803, 3804; 30 *Ga.*, 164; 59 *Ib.*, 562; 54 *Ib.*, 527; 53 *Ib.*, 286; Code, §2196; 12 *Ga.*, 170; Story on Agency, 58; 61 *Ga.*, 149; 60 *Ib.*, 498; 61 *Ib.*, 660. On charge concerning duty as attorney, 56 *Ga.*, 685; 4 Conn., 527; 1 Penn. St., 395. Cessation of relation of attorney while on the bench, 23 *Ga.*, 175.

JACKSON, Chief Justice.

This action was brought by Freeman, executor of Neal, against Bigham, on an indorsement of a promissory note whereby the indorser limited his liability in the following words; "Indorsed second instance only, and this note to be sued when due, without any delay, if not promptly paid."

The defendant pleaded the statute of limitations and a release by the plaintiff's testator in consideration that he, the defendant, being an attorney at law, would sue the note to judgment without charging any fee therefor. The case went to trial on these issues, and the jury found a verdict for the defendant on such plea; whereupon the plaintiff made a motion for a new trial on numerous grounds therein set out, and found in the report of the case.

1. The testimony is sufficient to support a verdict on each plea on either side, in our view of it, and must stand unless, in the ruling of the court on the testimony or in the charge to the jury, there be such error as requires the case to be sent back for a trial *de novo*.

Freeman, executor, *vs.* Bigham.

On a careful examination of this voluminous record, we conclude that the case is very close on the facts. Witnesses testify to statements of the parties which are at variance with each other, and cannot all be made to consist with truth. The vast number of letters introduced are also capable of two constructions, and inferences and arguments may be drawn from some favoring the theory of the plaintiff, and from others sustaining the pleas of defendant.

2. The plea of the statute of limitations was first filed, and some term or two thereafter the release was pleaded. It is unfortunate that the parties could not both have been heard, and brought face to face with each other on the real merits of the controversy; but the voice of one has been hushed in death, and the rule of law, as of justice, will not suffer the other to be heard in respect to any contract or conversation which passed between the two, and had reference to the cause of action and the issue between them. Anybody else may tell all that both said when together, or that either said against his interest. But death having silenced one, the law silences the other on the great principle that equality is equity.

We think that on the issue of the release, this principle was violated in permitting the defendant to swear in respect to a message which he testified that Mr. Freeman delivered to him from the plaintiff. That testimony is set out in the fourteenth ground of the motion, and is as follows: " Freeman brought the note to me, to my office, early in January, 1861, for suit; after I had written the ordinary receipt for collection, Freeman reminded me of a contract I had made with Mr. Neal as to suing the note to judgment for the release of my liability as indorser, and requested me to add the words, ' I having agreed to sue the same without charge for professional services,' as he would like to have the receipt in accordance with Mr. Neal's instructions."

It is true that Freeman was living, and could confront

and did confront the defendant in reference to this matter, denying it *in toto ;* but if Neal had been living his voice could have been heard upon it; he might have denied that he gave any such instructions, and thus his testimony might have turned the scale in the minds of the jury, and settled the controversy in respect to the alleged message. It will be seen that the defendant puts in the dead mouth of Neal words spoken to Freeman and communicated to him by Freeman, which, if true, went to the vitals of the issue of release, and established that release beyond per-adventure. Thus the principle of the equality of the dead with the living, which we think is the corner stone of our evidence act permitting parties to swear in their own cases, and on which the rulings of this court on the subject of permitting the living man to swear at all where his adversary is dead, is shaken, if not crushed, by the ruling on this point. There may be opinions of this court which approximate the ruling here, but none which sustain it. Of any contract within the scope of his authority, *which Freeman made as agent of the deceased*, Bigham was competent to give his version, because Freeman was alive to confront him, who in such case was empowered to make the contract, and made it for the dead, and who only could know on Neal's side whether it was or was not made; but it is not pretended that Freeman as agent made the contract of release. That contract was made by Neal himself, if made, immediately after the indorsement by Bigham, according to defendant's claim ; and hence Freeman was only repeating to Bigham what the decedent said touching a past contract between Neal and Bigham made by themselves, and *with which contract* the agent to have the note sued had nothing to do. Bigham might as well be permitted to testify what Neal said to him in person as to testify what message he sent him by another. We cannot tell what effect this testimony had on the jury. It may have decided the issue, conflicting and close as the evidence appears to be. It can make no difference in

principle, that Freeman is Neal's executor, and the party plaintiff, because he is no party to the contract. Neal was that party.

3. Sterling was no party to the indorsement. Essentially it is a separate contract from his own as the maker of the note, and he was competent to testify in regard to all that transpired between Neal and Bigham. He has no interest in the issue. Before, and since the evidence act, he would be competent—before, because he has no interest, having the note to pay, if ever he is able, either to Neal or to Bigham, and to Neal sooner than to Bigham, because Neal has already a judgment against him, and Bigham has none; and since the evidence act, because he is no party to the contract or cause of action, which is the indorsement. And every indorsement is a new contract. 2 Kelly, 158. There seems to be some doubt according to his testimony, whether this contract of release was made before or after the indorsement; if before, it is merged, or ought to have been, in the written contract, and that cannot be varied or added to by anything which was part of the original undertaking; if subsequent, it is a valid, separate agreement for a valuable consideration, to-wit, professional services, which have been performed, and the jury should be fully instructed in respect to the law bearing thereon. The testimony ought to go in, but the jury should be instructed to pass on the question whether this agreement to release the indorser was made before or after the contract of indorsement. If made before, of course it would have been inserted in the writing in the very nature of things; if afterwards, it would not, or at least it need not, have been done.

4. We think that the letters objected to were properly admitted. It is true that they were on the subject of compromise, but compromise of what? Not of Bigham's liability as indorser, but of Sterling's indebtedness as maker. Bigham was the counsel of Neal and advising him of Sterling's situation, and recommending him to

v 65—38

settle and compromise with Sterling. Perhaps it might be well on another trial for the court to instruct the jury that if in their judgment, on a careful reading of the letters, it appeared that Bigham was interested in the compromise and really moving in his own interest, and attempting to effect it for himself as well as for Sterling, it might be considered in weighing the evidence ; but certainly nothing of the kind is so patent in the letters, to us, as to demand their withdrawal from the jury. On the contrary, their tone seems to be that Neal, and Bigham, as counsel, were attempting to compromise with Sterling, the maker and judgment debtor, and what passed between the two on the same side is not obnoxious to the principle that a party shall not be hurt by his adversary for anything he says or writes when trying to buy his peace, and " agree with his adversary quickly while he is in the way."

5. Indeed, in our view of the statute of limitations, these letters are of the utmost importance, and absolutely necessary to elucidate that issue. A confidential relation subsisted between these parties. Bigham was counsel for Neal. After he had sued the makers of this note to judgment, he was employed to prosecute that judgment in execution, and to make the money out of the makers. This devolved on him the duty to advise his client of the status of defendants—the makers' property, of the prospects of collection—of the record evidence of their estate, and of their liability—and his *bona fides* in all this trust confided to him has much to do with the plea of the statute of limitations under the peculiar relations between the two. The issue on the statute, it is true, is distinct from that on the release. If there was a release, the statute is unnecessary. If Bigham is liable in the second instance, did plaintiff sue in six years after this liability was made apparent to him? That is the issue on the statute. The court undoubtedly gave the law correctly as to what proof would be sufficient to show the insol-

vency of the makers and their inability to pay *this judg-ment debt ;* and that whenever Neal got that evidence of the inability of the makers to pay it, his right of action agai..st the indorser accrued ; but in this case, Bigham occupied a two-fold position. He was attorney and coun-sel for Neal, and liable to him in the second instance to pay this debt, if he had not been released. He was bound to give all the information he had to his client, touching the prospect of collecting this judgment debt out of his principals, just the same that it involved the time to bring a suit against himself, as if another had been in-volved as indorser in the second instance, and was to be sued by his client. A trust was devolved upon him, and not a mere naked trust, and that trust required him to communicate the whole pecuniary situation of the makers to Neal or his agent, that action might be taken against the indorser. We do not mean to say or to intimate that this has not been done in this case, but simply to remark that the presiding judge should direct the attention of the jury to the issue whether or not it has been done, in their judgment, under the evidence.

The relation of attorney and client is eminently confi-dential. It approximates that of guardian and ward, in respect to the superior knowledge of the attorney touch-ing the client's interest, which he is commissioned and paid to watch and to guard. It is that of trustee and *cestui que trust,* and the former must have no personal interest antagonistic to that of the latter; nor can he so mix the two as not readily to distinguish between them ; if he does, he must suffer rather than his confiding client. If their interests collide, his must yield ; and for this rea-son, it is dangerous that he assume, or circumstances force him into the double relation of attorney for, and liability in the second instance to, the same person in the same transaction. In one case, this court went so far as to hold that an attorney who was liable as security on the same paper with his principal, and who acted with that

principal and for him in assisting him to defeat the creditor's claim on the principal by putting that principal in bankruptcy, and otherwise helping him to impede the collection of the debt against the principal, was estopped from setting up his discharge as surety by anything the creditor did or omitted to do towards the principal, whilst the attorney was so helping his principal against the common creditor of both; and therefore the failure of the creditor to prosecute his claim in the bankrupt court where the surety, as attorney, was representing the bankrupt principal, though it might have hurt the surety and increased his risk, would not discharge him.   60 *Ga.*, 52.

That case certainly went far; as the relation of client and attorney did not exist between the creditor and the surety, but between the principal debtor and the surety; but it serves to illustrate the stern, though equitable and beautiful morality with which the exponents of our law, of the same brotherhood, would enrobe the common profession.

(*a*). The testimony of Bigham to the sayings of Neal communicated by Freeman, improperly admitted, as we have ruled on the issue of the release, also affect this view of the statute of limitations.   For if Bigham was released as indorser when he sued the note to judgment against the makers, he did not occupy the double relation of debtor and attorney; but was only the attorney of Neal free from all double motive of action, and every fact, therefore, which tended to show his release, necessarily showed also his *bona fides* and single eye in all his communications to his client.

(*b*). It is to be observed that the presiding judge, whilst he charges the jury that if the plaintiff, by ordinary diligence, could have discovered the insolvency of the makers more than six years before the action was brought against Bigham, his right of action was barred, yet wholly failed to allude to any obligation on the part of Bigham to use this diligence for Neal, and to communicate what he had

learned to Neal, though his attention was called thereto by a written request. Neal relied on Bigham for diligence in respect to Sterling's and Sims' condition, for he had employed him to press this execution against them. He lived where they did, and where the deeds were recorded, and it was his duty to apprise Neal, who lived in another county, of their situation. We do not say that these letters do not show that this duty was discharged or was not discharged; but that this issue was not submitted to the jury, as it ought to have been.

6. We cannot say that the letter of the eighth of September, 1876, was admissible. It was written for a compromise between Bigham and Freeman, by the former, after suit, and no expression in it looking to that end should have gone to the jury. The court was right to withhold it.

The case in 54 *Ga.*, was properly ruled as inadmissible to go to the jury.

7. There was no error in refusing to postpone this case until the claim case of Neal *vs.* Sterling had been tried. Nor do we find that there was error in charging that the relation of client and attorney ceased while Judge Bigham was on the bench. And, generally, the record discloses no error, certainly no material error, other than those indicated above.

The judgment is reversed because the court erred in admitting the testimony of Bigham as to the sayings of Neal reported to him by Freeman, as alleged, because Neal was dead; and in failing to charge in respect to the statute of limitations, the obligation on Bigham's part to inquire and communicate the status of the makers of the note to his client, Neal, in modification of the charge which put on Neal the duty to inquire and act to prevent the bar of the statute.

Judgment reversed.