31058. FRANKLIN *v.* MOBLEY, superintendent of banks.

DECIDED DECEMBER 5, 1945.

248

*J. D. Kirkland, Hinton Booth,* for plaintiff in error.
*Hugh R. Kimbrough,* contra.

SUTTON, P. J. (After stating the foregoing facts.) ▮ The plaintiff in illegality, who is the plaintiff in error here, contends that the execution is proceeding illegally, for the following reasons: (1) because there is no legal party plaintiff in fi. fa., there being at the time of the levy no legal right of action in the original plaintiff in fi. fa., or in the bank, in whose favor it was issued, and there must be a legal right of action in the party bringing the proceeding, in order to maintain a proceeding for the use of another; (2) because the alleged usees, who now claim ownership of said execution, failed to prove their title thereto, by failing to show a written transfer of said execution from the superintendent of banks to the liquidating committee, or a written transfer by the liquidating committee to themselves as individuals; (3) because the alleged usees permitted the execution to become dormant and dead, as against Pulaski School District, the principal defendant, by their failure to have the nulla bonas of 1936

and 1943 recorded on the general execution docket against said principal defendant; (4) and, having permitted the execution to become extinct as against the principal defendant, the alleged usees thereby released the sureties from any further liability on the execution.

We will first consider whether the execution is proceeding illegally for the want of a party plaintiff. The execution was issued in favor of and stood in the name of A. B. Mobley, superintendent of banks, in charge of The Farmers Bank, as plaintiff in fi. fa., when the levy in question was made. There was no written transfer of the execution to the usees in this case; but they contended that they were the equitable owners of the execution. It is true, as a general rule, as contended by the plaintiff in error, that a legal proceeding arising ex contractu shall be brought or pursued in the name of the party in whom the legal interest in such contract is vested. Code, § 3-108. And, "A plaintiff having no right of action at all can not recover either for his own benefit or for the use of any one else." *Terrell* v. *Stevenson*, 97 *Ga.* 570 (25 S. E. 352). See also *National Ben Franklin Fire Ins. Co.* v. *McGann*, 170 *Ga.* 573 (153 S. E. 362); *Norwich Union Fire Ins. Society* v. *Wellhouse*, 113 *Ga.* 970 (2) (39 S. E. 397). Judgments and executions are transferable by endorsement or written assignment in the same manner as bills of exchange and promissory notes. Code, § 14-1801. As a general rule, before a judgment can be enforced in favor of a party other than the one in whose favor it is rendered, it must be transferred in writing to such person. *Arnold* v. *Citizens & Southern National Bank*, 47 *Ga. App.* 254 (170 S. E. 316), and cit. But, while a legal assignment must be in writing, an equitable assignment can be made either by an oral agreement or in writing. *Beasley* v. *Anderson*, 167, *Ga.* 470 (1*d*) (146 S. E. 22); *United Engineers & Constructors* v. *Fiat Metal Mfg. Co.*, 175 *Ga.* 509, 513 (165 S. E. 609); *Smith* v. *Folsom*, 190 *Ga.* 460, 471 (9 S. E. 2d, 824). The usees in the present case relied upon an equitable assignment of the fi. fa. Almost a hundred years ago, it was held, in *Robinson* v. *Schly*, 6 *Ga.* 515 (2), that "An assignment of a judgment should be in writing, in order to vest the legal title in the assignee, and if transferred by delivery merely, the assignee takes an equitable interest and may use the name of

the plaintiff for the purpose of enforcing his rights." This principle of law is applicable in the present case. The Code, § 81-1307, provides: "And when it shall become necessary for the purpose of enforcing the rights of such plaintiff, he may amend by substituting the name of another person in his stead, suing for his use." It was said in *Beasley* v. *Stevenson,* supra, that "Any order, writing, or act which makes an appropriation of a debt or funds amounts to an equitable assignment, and such an assignment may rest in parol." "In a suit upon a chose in action. by the holder of the equitable title thereto, the plaintiff may amend his declaration by adding the name of the person who holds the legal title, suing for his use." *Germania Bank* v. *Collins,* 113 *Ga.* 1010 (39 S. E. 421); *Estes* v. *Thomson,* 90 *Ga.* 698 (17 S. E. 98); *Wheeler* v. *Staplelon,* 99 *Ga.* 731 (27 S. E. 724); *Cross* v. *Johnson,* 65 *Ga.* 717; *Hayne* v. *Perry,* 25 *Ga.* 400. See also *Madison Supply & Hardware Co.* v. *Sidwell,* 20 *Ga. App.* 471 (93 S. E. 117).

The plaintiffs in fi. fa. alleged that they were the sole joint equitable owners of the assets of the bank, including the fi. fa. in question; and the uncontroverted evidence was sufficient to establish their contention in this respect. This being true, they were entitled to proceed to enforce the collection of the fi. fa. in the name of A. B. Mobley, superintendent of banks, in charge of The Farmers Bank, for their use. Accordingly, the execution was not proceeding illegally for the want of a party plaintiff.

■ Was the execution proceeding illegally on the ground that it was dormant as to the Pulaski School District, the principal defendant? The execution was entered by the clerk on four separate pages on the general execution docket against all of the defendants under the letters P, D, N, and F, on August 24, 1929, which was within 10 days of the date of the judgment. On August 18, 1936, and within the seven-year period from the date of the judgment and the date of the entry of the execution on the general execution docket, the sheriff made an entry of nulla bona. on the execution as follows: "Due search made and no property of defendant found upon which to levy the within fi. fa.;" and this entry and the date thereof were entered on the general execution docket by the clerk, on the same day, under the letters D, N, and F (as against the four individual defendants), but were

not entered under the letter P, that is, this nulla bona entry was entered on three of the same pages of the general execution docket where the fi. fa. was first entered, though not under the letter P. Then, on August 9, 1943, a similar nulla bona entry was made by the sheriff and entered by the clerk on two pages of the general execution docket under the letters D and F where the fi. fa. was first entered and where the first nulla bona was entered. The execution was levied on the land of George O. Franklin on August 17, 1943, which was within the seven-year period from the date of the entry of the first nulla bona, on the general execution docket, as to this execution. Therefore, the entry of the second nulla bona is not material here. Counsel for the plaintiff in error in his brief states that there are two forms of general execution dockets in use in this State; and that the one in use in Candler County is divided in alphabetical sections, each section marked with an alphabetical index tab, which eliminates the use of a separate index, and each execution is recorded under the index letter of the defendant; and, if there are two or more defendants whose names begin with different letters, it is recorded under each letter. It is contended by the plaintiff in error that the failure of the clerk to enter the nulla bona on the general execution docket under the letter P caused the execution to become dormant as to the Pulaski School District, although the nulla bona entry was duly entered on three other pages of the general execution docket, as above stated. The Code, § 39-701, provides: "The clerk of the superior court of each county shall be required to keep a general execution docket; and as against the interest of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the defendant's property, no money judgment obtained within the county of the defendant's residence, in any court of this State (naming the courts), shall have a lien upon the property of the defendant from the rendition thereof, unless the execution issuing thereon shall be entered on said docket within 10 days from the time the judgment is rendered. When the execution shall be entered upon the docket after the 10 days, the lien shall date from such entry." The statute does not require or specify any particular form of general execution docket, but does require that executions be entered upon said docket within a certain time in order for the fi. fa. to become a lien on the defendant's

property as against the interest of third parties acting in good faith and without notice. The Code, § 110-1001, declares: "A judgment shall become dormant and shall not be enforced: 1. When seven years shall elapse after the rendition of the judgment before execution is issued thereon and entered on the general execution docket of the county wherein such judgment was rendered; or 2. Unless entry is made on the execution by an officer authorized to levy and return the same, and such entry and the date thereof are entered by the clerk on the general execution docket within seven years after the issuance of the execution and its record." The record of entry on the execution was duly made on the general execution docket in the first instance; and we think the entry of the nulla bona on August 18, 1936, was entered on said docket in substantial compliance with the provisions of the statute in that respect, and such entry was sufficient to prevent the execution from becoming dormant as to the principal defendant, the Pulaski School District. In *Saffold* v. *Wade*, 56 *Ga.* 174, it was held: "Where, upon an execution against both defendants, the sheriff entered a levy, in due time, as made upon the property of one (naming him), the entry kept the judgment from becoming dormant as to either, for seven years from the date of the levy." That decision was rendered in January, 1876, and at that time the law did not require that the execution be entered or that the officer's entry thereon be entered on any execution docket. Dormancy of an execution was prevented by the entry made by the sheriff or other levying officer on the execution in due time, that is, within the seven-year period; and it was held in the *Saffold* case that the entry of levy on the execution as to one of the defendants prevented dormancy as to the other defendant. By parity of reasoning, the same principle of law is applicable under the facts of the present case. It was held in *Merrick* v. *Taylor*, 14 *Ga. App.* 81 (80 S. E. 343): "The book kept by the clerk as a general execution docket was a substantial compliance with the law; and, if in a given instance an execution was improperly indexed, and third persons were thereby misled to their injury, their remedy, if any, would be against the clerk; but the fact that the execution was so improperly entered would not prevent the entry from operating as legal notice."

In our opinion the execution in question was not dormant as

to the Pulaski School District, and was not proceeding illegally against the property of the defendant Franklin.

■ The court did not err in overruling the motion for a new trial. *Judgment affirmed. Parker, J., concurs.*

FELTON, J., concurring specially. I concur in the opinion and judgment. Under the circumstances of the case, there was no necessity to make the present superintendent of banks a party plaintiff to the execution.