### SOUTHWORTH v. MORGAN.

#### (Supreme Court, Trial Term, Oneida County.　March, 1910.)

1. CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS—"DOING BUSINESS WITHIN STATE"—SALE OF STOCK.

    New York General Corporation Law (Consol. Laws 1909, c. 23) § 15, provides that no foreign stock corporation other than a moneyed corporation can do business within the state without first having procured a certificate that it has complied with the requirements of law. *Held*, that a subscription to the stock of a foreign corporation and the issuance of the stock subscribed for to a resident of New York do not constitute a transaction of "business within the state" by the corporation.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.*

    For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160; vol. 8, pp. 7640, 7641.]

2. CORPORATIONS (§ 268*)—STOCKHOLDER'S UNPAID SHARES—RECOVERY OF BALANCE—ACTION BY TRUSTEE—COMPLAINT.

    Since a stockholder in a foreign corporation is under a contract obligation to pay the full par value of stock subscribed for by him, enforceable by a suit at common law, the trustee in bankruptcy of a New Jersey corporation was not bound to allege Laws N. J. 1896, p. 284, § 21, making stockholders liable until their subscriptions have been fully paid, in a complaint against resident stockholders to recover unpaid subscriptions; such statute not providing an exclusive remedy.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1129–1148; Dec. Dig. § 268.*]

3. LIMITATION OF ACTIONS (§ 65*) — ACCRUAL OF CAUSE OF ACTION — UNPAID STOCK—STOCKHOLDER'S LIABILITY.

    A stockholder's liability for unpaid stock, so far as the creditors of the corporation are concerned, does not accrue until the making of an order in proceedings to wind up the corporation calling on such stockholders to pay the balance of their subscriptions.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 261, 345–350; Dec. Dig. § 65.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CORPORATIONS (§ 262*)—STOCKHOLDERS—UNPAID SUBSCRIPTIONS—DEFENSES
—FRAUD.

In a suit by a trustee in bankruptcy against stockholders of the bankrupt corporation to recover unpaid stock subscriptions, it was no defense that defendant purchased solely on the agreement that the corporation's officers should locate its plant in a particular village, which they failed to do, and that it was agreed that the stock should be regarded as fully paid on the subscriber's paying 25 per cent. of the par value, which was paid when the stock was issued.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1076–1083; Dec. Dig. § 262.*]

Action by Lotus N. Southworth, as trustee in bankruptcy of the Remington Automobile & Motor Company, against Andrew D. Morgan. Judgment for plaintiff.

Affirmed 128 N. Y. Supp. 196.

George E. Dennison, for plaintiff.
A. D. Morgan and Howard C. Wiggins, for defendant.

MERRELL, J. This action is brought by the plaintiff to recover of the defendant, Andrew D. Morgan, the sum of $150, alleged balance unpaid upon two shares of the capital stock of the Remington Automobile & Motor Company subscribed for by the defendant.

The facts, briefly, are as follows:

Some time in the month of September, 1900, the said bankrupt, a foreign corporation, organized under and in accordance with the laws of the state of New Jersey, contemplated starting a manufactory of automobiles at the village of Ilion, N. Y., and, with the view of securing local interest and financial support by the citizens of Ilion, the board of directors of the said Remington Automobile & Motor Company adopted a resolution to dispose of 200 shares of the capital stock, of the par value of $100 each, to citizens of Ilion, and to accept in full payment of such shares the sum of $25 per share. The defendant, with other citizens of Ilion, was approached by representatives of the company and requested to subscribe for said two hundred shares at the price named, the company, through its representatives, agreeing that, as a consideration for subscription for said shares of stock and the further voluntary subscription of a sum of money with which to erect necessary buildings and establish its plant at Ilion, it would permanently establish its manufactory there. Under this inducement several citizens did subscribe for said stock, including the defendant, who subscribed for, and to whom was a few days later issued, the two shares of said stock in question. There is no doubt upon the evidence of the representation by the officers of the corporation that the $25 for each share of stock was to be in full payment therefor, and that in consideration of such subscription the plant would be permanently located at Ilion. Indeed, the evidence clearly shows that the motive for such subscription was purely one of local interest of the citizens of Ilion, who sought thereby to establish a business enterprise in their village, rather than any expectation on their part to reap financial benefit from the enterprise. The entire 200 shares were not subscribed for by the citizens of Ilion, and subsequently the resolution authorizing the disposi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of said shares at one-quarter their par value was revoked by the directors of the company and the contemplated establishment of the manufactory at Ilion abandoned, and the business was finally located at the city of Utica.

The business, however, did not prosper, and on the 25th day of November, 1902, the company passed into the hands of the plaintiff, as receiver in bankruptcy. December 13, 1902, the company was adjudged a bankrupt, and on December 27, 1902, plaintiff was appointed trustee of said bankrupt. The available assets of the concern were insufficient to meet the demands of its creditors. Subsequently, and on April 3, 1906, an order was granted by the United States District Court directing a call and assessment upon the Ilion stockholders, including the defendant, of $75 per share, for each and every share held by them, to meet the deficiency in assets required to meet the company's obligations to its creditors. An appeal was taken from said order to the United States District Court of Appeals, and the order was by said Appellate Court modified to the effect that such order should be without prejudice to any defense which individual stockholders might have to the plenary action to collect the amount of their respective assessments.

This action, as above stated, is brought by the plaintiff, as trustee, to recover of the defendant the sum of $75 on each of his two shares of stock.

The defendant meets plaintiff at the very threshold with certain objections which, while in a way technical, are still not to be overlooked, and are deserving of attention.

First, the defendant moves for the dismissal of plaintiff's complaint upon the ground of his failure to allege and prove a compliance with the provisions of section 15 of the general corporation law of the state of New York (Consol. Laws 1909, c. 23).

The statute provides that "no foreign stock corporation, other than a moneyed corporation, shall do business in this state without first having procured * * * a certificate that it has complied with all the requirements of law, * * * " and prohibiting any such corporation from maintaining "any action in this state upon any contract made by it in this state unless prior to the making of such contract it shall have procured such certificate." The procuring of such a certificate was a condition precedent to the right to do business in this state, and, if the transaction in issuing the stock in question could be considered a transaction of the business of the corporation, then there would be much force in defendant's contention that the complaint should have contained an allegation that such certificate had been procured. But I do not think under the meaning of the statute that the transaction relative to the subscription and issuance of the stock in question was a transaction of business by the corporation contemplated by the statute quoted above (Union Trust Company v. Sickles, 125 App. Div. 105, 109 N. Y. Supp. 262), and therefore it does not seem to me that defendant's objection above referred to is tenable.

The defendant raises a further technical objection that the complaint should be dismissed for the reason that it does not specially allege and

set forth the statute of the state of New Jersey, being section 21 of chapter 185 of the Laws of New Jersey, passed in the year 1896, making stockholders liable until subscriptions are fully paid, and providing that, where the whole capital of a corporation shall not have been paid in and the capital paid shall be insufficient to satisfy its debts and obligations, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of such share as fixed by the charter of the corporation, or such proportion of that sum as shall be required to satisfy such debts and obligations. The defendant assumes that plaintiff's sole right of recovery is by virtue of this statute. Were this so, there would be much force in his objection that the foreign statute was not alleged and set forth in the complaint, because foreign statutes must be alleged as facts. But it seems to me, under well adjudicated cases, that the liability of the defendant to the creditors of the defunct corporation is contractual and dependent upon principles of common law, and that the enforcement of the statutory liability against a resident stockholder for debts of the corporation does not rest upon the theory that the laws of the foreign state are in force in this state, but solely upon the contractual obligation he assumes to meet the liability affixed by the statute to the ownership of the stock. In other words, I do not think plaintiff's right of recovery dependent upon the New Jersey statute, but that it rests upon his implied contract under principles of the common law. Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968; Howarth v. Angle, 162 N. Y. 179, 56 N. E. 489.

The defendant also invokes the provisions of the six-year statute of limitations in this state, contending that the cause of action against him, if any ever existed, accrued at the time of his subscription for the stock in September, 1900, and that, more than six years having elapsed since said cause of action accrued, this action, brought in October, 1909, is barred. The difficulty with defendant's contention is that in my opinion the cause of action did not accrue until the order was made requiring the trustee to make a call upon the stockholders for moneys required by him to discharge the debts of the corporation. The trustee, it seems to me, occupies a much different position, so far as this controversy goes, than would the corporation itself. It is very doubtful if the corporation could have a claim upon the defendant for more than the stipulated price it had agreed upon for its shares of stock, but the creditors occupy a very different position. They had a right to assume that the defendant was the owner of the two shares in question, and that the corporation had in its possession the $200, being the par value of said shares, and, until an authorized demand in behalf of the creditors was made for payment, there was no obligation resting upon the defendant to pay the balance unpaid for his two shares of stock. It seems to me the case of Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, cited above, is directly in point upon this proposition. I quote from the opinion of Mr. Justice Woods as follows:

"He [the subscriber] owed the creditors nothing, and he owed the company nothing, save such unpaid portion of his stock as might be necessary to satisfy the claims of the creditors. Upon the bankruptcy of the company, his obligation was to pay to the assignees upon demand such amount upon his unpaid stock as would be sufficient, with the other assets of the company, to

pay its debts. He was under no obligation to pay any more, and he was under no obligation to pay anything until the amount necessary for him to pay was at least approximately ascertained. Until then his obligation to pay did not become complete. * * * The proceeding for the assessment in the bankruptcy court was in effect a proceeding to accomplish two purposes: First, to set aside the contract between the company and the stockholder; and, second, to fix the amount which the stockholder would be required to pay. Until these things were done, the cause of action against the stockholder did not accrue, although his primary obligation was assumed at the time when he subscribed the stock."

I therefore must disagree with defendant's contention that the cause of action, if any existed, accrued at the time he subscribed for the stock, and must hold that no cause of action against him accrued until subsequent to the order directing the trustee to make a call and assessment upon the holders of the shares of stock for the balance unpaid thereon.

Defendant, however, with considerable reason, it seems to me, claims that his subscription to the two shares of stock in question was induced by the representations of the company's officer, Holmes, who negotiated the sale of the stock, that, if the citizens of Ilion, and particularly this defendant, would subscribe for such stock, the company would erect its plant at Ilion, and the further representation that the $25 fully paid for said stock, and that from thenceforward said stock would be nonassessable and fully paid. Under the evidence, there can be no reasonable doubt but that just the representations claimed by the defendant were in fact made by the secretary and manager of the automobile company, and, as between the company and the defendant, without the intervening rights of creditors, I do not think any cause of action would lie to collect the balance of the par value of said shares. But the creditors, represented by the plaintiff in this action, occupy an entirely different position. As I have before stated, they had a right to assume that the full par value for the shares of stock issued by the company was paid in by the persons to whom said stock was issued. That is dependent upon an implied contract on the part of the subscriber to pay the par value for the stock issued to him. Howarth v. Angle, 162 N. Y. 179, 56 N. E. 489; Stoddard v. Lum, 159 N. Y. 265, 53 N. E. 1108, 45 L. R. A. 551, 70 Am. St. Rep. 541; Knickerbocker Trust Company v. Islin, 185 N. Y. 54, 77 N. E. 877, 113 Am. St. Rep. 863; Lowery v. Inman, 46 N. Y. 119.

The language of Mr. Justice Bartlett, in the opinion in Stoddard v. Lum, 159 N. Y. 265, 53 N. E. 1108, 45 L. R. A. 551, 70 Am. St. Rep. 541, well expresses the liability of a stockholder for his unpaid subscription at the suit of the assignee of an insolvent corporation. I quote as follows:·

"Subscribers to the stock of a corporation incur a debt which may be enforced by any common-law or equitable remedy. The capital stock of a corporation is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. The creditors have a lien upon it in equity. Unpaid stock is as much a part of this pledge and as much a part of the assets of the company as the cash which has been paid in by it."

Judge Bartlett further quotes from the opinion in the case of Sanger v. Upton, Assignee, 91 U. S. 56, 23 L. Ed. 220:

"Creditors have the same right to look to it as to anything else, and the same right to insist upon its payment as the payment of any other debt due to the company. As regards creditors, there is no distinction between such a demand and any other asset which may form a part of the property and effects of the corporation."

It is no doubt a hardship upon this defendant to be compelled to pay more for the stock in question than the price agreed upon with the manager of thè corporation, and at first thought it would seem that the apparent injustice to the defendant would overweigh any other consideration in determining this case. But, when the defendant subscribed for the shares of stock, he became the owner thereof, and assumed personal liability to the creditors of the corporation for its debts up to the full par value of his stock. This liability was not entirely dependent upon statute, but was a liability voluntarily assumed by his act in becoming a stockholder.

I do not think that as between the plaintiff, representing creditors of the defunct corporation and this defendant, the defendant can plead misrepresentation on the part of the officers of the corporation and a violation of their agreement to establish the plant at Ilion as a defense in this action to compel payment of the balance of the par value of his two shares of stock. The defendant, after he learned of the abandonment of the enterprise, so far as his village was concerned, took no steps to rescind his contract, or to recover back the money paid by him under the false representation of the company's agents, but continued to hold his two shares of stock, and on at least one occasion executed to another a proxy to vote his shares of stock at a meeting of the stockholders held at the city of Utica. A stockholder cannot escape liability to creditors upon the ground that his subscription for the stock was conditional. Meyer v. Blair, 109 N. Y. 600, 605, 17 N. E. 228, 4 Am. St. Rep. 500; Phœnix Warehouse Company v. Badger, 6 Hun, 293.

I therefore conclude that plaintiff is entitled to recover of the defendant the sum of $150, balance unpaid upon his shares of stock.

Decision in proper form may be prepared and submitted.