WILLIAMS, next friend, *v.* EAST TENN., VA. & GA. RY. CO.

1. Where the legislature chartered a railroad company and provided that its principal office should be in the city of Atlanta, and where a foreign railroad company has obtained possession and control of the railroad of the former and is exercising franchises granted in the charter, and has an office in the city of Atlanta, an action for personal injuries may be instituted against it in the city court of Atlanta, though the injury was done in another county of this State through which the road runs.
2. Section 3406 of the code, which provides that a railroad company may be sued in any county where the injury occurred, is permissive and cumulative, and not exclusive.

October 24, 1892.

Railroad. Foreign corporation. Venue. Remedy. Statutory law. Before Judge VAN EPPS. City court of Atlanta. June term, 1892.

F. R. & J. G. WALKER, for plaintiff.

DORSEY, BREWSTER & HOWELL, for defendant.

SIMMONS, Justice.

The cause of action was personal injuries from the running of the defendant's trains in the county of Paulding in this State; the action was brought in the county of Fulton and in the city court of Atlanta. The plea to the jurisdiction was to the effect that the defendant was a foreign corporation, and in this State could be sued only in the county in which the cause of action originated, jurisdiction in that county being admitted to exist under the statute which declares that " all railroad companies shall be liable to be sued in any county in which the cause of action originated, by any one whose person

or property has been injured by such railroad company, their officers, agents or employees, for the purpose of recovering damages for such injury," etc. (Code, §3406.)

It is clear that this statute is not exclusive, but is merely permissive and cumulative. Its language is not restrictive, for it says such companies " shall be liable to be sued," etc., and not that they shall or must be. Besides, as to resident corporations it could not be restrictive consistently with the constitutional requirement that actions of this kind " shall be tried in the county where the defendant resides." (Art. 6, sec. 16, par. 6, Code, §5172.) Unless otherwise provided by statute, all corporations are to be regarded as residing where their principal office or place of business is located, and as subject to be sued there, though their residence may extend to other places where business is conducted under their corporate franchises. It was contended, however, that as the principal office of this corporation was in the State of its creation, express legislation was necessary to subject it to suit at any other place, and that the statute permitting suit in the county of the injury is the only legislation which could subject it in cases of this kind.

In our opinion no such legislation was necessary for this purpose. Our code declares that " a citizen of another State passing through this State may be sued in any county thereof in which he may happen to be at the time when sued." (§3416.) A corporation is for some purposes a citizen, and if present is no less subject to the jurisdiction than any other citizen of another State. Besides, a corporation, though a citizen of but one State, may be a resident also of other States. This court, in *City Fire Insurance Co.* v. *Carrugi*, 41 *Ga.* 660, held that " a foreign corporation doing business in this State is subject to the jurisdiction of the courts of this State, if it can be served with process "; and our laws provide for

the service of process upon foreign as well as domestic corporations. (Code, §3369 *et seq.*) The test of jurisdiction *in personam* is whether the corporation is so far present as that service can be effected, and it is to this extent present where its officers or agents are present and have an office and are engaged in the conduct of its business. When thus engaged in the exercise of its franchises in a State other than that of its creation, it cannot be said that the corporate entity is confined to its principal office in the latter. In fact, for the purpose of being sued, it may be treated as a resident of each State in which it does business under State laws. Reno, Non-Residents (1892), §120, and cases cited. It is said that " when a foreign corporation, by its officers, comes within the jurisdiction of another State and there engages in business, it becomes subject to the laws of the latter State, and to the process of the courts ; and where such corporation, by its officers, is guilty of a wrong or commits a trespass within the State, it cannot escape the consequences of its illegal acts by setting up that it holds its existence under a foreign government." Boone, Corp. §74. The decisions of the Supreme Court of the United States touching this question are discussed by Mr. Justice Harlan of that court, and the following conclusions stated, in a recent case in which he presided as Circuit Justice (United States *v.* Southern Pacific R. Co., 49 Fed. Rep. 302, Feb., 1892) : "Those cases undoubtedly hold that a corporation cannot throw off its allegiance or responsibility to the State which gave it existence, and that its primary, legal domicile or habitation,—that is, its citizenship,—is in such State ; consequently, for the purposes of suing and being sued in the courts of the United States, it is to be deemed a citizen of the State by whose laws it was made an artificial person. But neither those cases, nor any case in the Supreme Court of the United States, directly decides that

a corporation may not, in addition to its primary legal habitation or home in the State of its creation, acquire a habitation in, or become an inhabitant of another State, for the purposes of business, and of jurisdiction *in personam.*" "If it be said that inhabitancy in a State, in its strict legal sense, implies a permanent, fixed residence in that State, the answer is that a corporation of one State, operating, by agents, a railroad . . in another State, with its consent, or under its license, may be regarded as permanently identified with the business and people of the latter State, and, for the purposes of its business there, to have a fixed residence within its limits. . . It does there just what it would do if it had received its charter from that State." It is to be "deemed an inhabitant of the latter State for all purposes of jurisdiction *in personam* by the courts held there; although a corporation is, and while its corporate existence lasts must remain, a citizen only of the State which gave it life." See also Rorer, Interstate Law (ed. 1891), 292, and cases cited; Pierce, Railroads, 15; Railroad Co. *v.* Harris, 12 Wall. 83, 84; *Ex parte* Schellenberger, 96 U. S. 376; Railroad Co. *v.* Koontz, 104 U. S. 10, 11. In the latter case it was said, " the question of suability and jurisdiction is not so much one of citizenship as of finding. If a citizen of one State is found, for the purposes of the lawful service of judicial process, in another, he may ordinarily be sued there." "It is well settled that a corporation of one State doing business in another is suable where its business is done, if the laws make provision to that effect." See also Zambrino *v.* Galveston Ry., 38 Fed. Rep. 449.

Especially is this true as to a corporation operating a railroad in the exercise of powers and privileges granted to a corporation of this State, and upon a right of way acquired under the State's power of eminent domain.

In the present case it appears from the declaration

that the defendant, though claiming to be a corporation of Tennessee, is "a purchaser of the railroad track, property rights and franchises of the East Tennessee, Virginia & Georgia *Railroad* Company, which . . were the successors by purchase of the railroad tracks, property rights and franchises of the Cincinnati & Georgia Railroad Company, which latter company was incorporated under the laws of Georgia and was a Georgia corporation"; that the injuries were caused on the line of what was originally the railroad of said Cincinnati & Georgia Railroad Company, and what is now a part of the Atlanta division of the defendant's railroad, and that the defendant is operating said railroad in the county of Fulton and has its principal office and place of business for the State of Georgia at Atlanta in that county.

These averments are not denied, except in so far as it is stated that the defendant's principal office and place of business for this State is in Atlanta. It is admitted, however, that the superintendent having charge of one of the two divisions of its road in this State resides and has his office at Atlanta, though it is stated that the superintendent of the other division, whose head-quarters are at Macon, Georgia, is of equal authority, and that both are acting under orders from the home office and principal place of business of the defendant at Knoxville, in the State of Tennessee.

In the case of *Angier* v. *East Tennessee, Virginia & Georgia R. R.*, 74 *Ga.* 634, it was held that the company to which the present defendant has succeeded, namely, the East Tennessee, Virginia & Georgia *Railroad* Company, though a corporation of Tennessee, became a corporation of this State, by reason of its purchase of the rights, titles, properties, franchises, powers and privileges of every description of the Cincinnati & Georgia Railroad Company, the life of the latter having passed into

the purchaser, under the terms of the charter granted by this State to the Cincinnati & Georgia company. Under this charter the corporation was authorized to sell its railroad, including its charter, franchises, etc., to any other corporation, person or company, whether within or without this State. It was accordingly held that the purchaser was subject to suit in the courts of this State, as a domestic corporation, occupying the place and subject to the obligations of the Cincinnati & Georgia company, and that a cause against it could not be removed to the Federal court on the ground that it was a foreign corporation. Whether the present company became in like manner a corporation of this State when it succeeded by purchase to the railroad, property rights and franchises of the preceding purchaser, it is unnecessary to discuss. The exercise of the franchises of a corporation of this State was of itself enough to subject it to the requirements which would have attended the exercise of those franchises by that corporation under the laws of this State. As to lessees, and perhaps as to any other person or persons or corporation in possession of a railroad of this State, it is prescribed by statute that they "shall be liable to suit of any kind in the same court or jurisdiction as the lessors or owners" were. (Code, §3407) And this statute has been applied to foreign as well as domestic corporations. *Breed* v. *Mitchell*, 48 *Ga.* 533. But the jurisdiction in this case was not dependent upon this or any similar statute. We think when the defendant took the franchises of its predecessor it took them *cum onere*, whether there was any express statutory declaration to that effect or not. It is not to be supposed that the requirements annexed to the grant of those franchises should be divested by the mere fact of their having passed under the control of citizens of a foreign State. It certainly was never intended that non-residents should be allowed

to come in and enjoy the rights and powers of a *quasi* public corporation of this State, under the license or sanction of the State, and at the same time enjoy immunity from the conditions imposed upon the original corporation in the grant of those rights.

A decision of this court somewhat in point is that in *Alabama Great Southern Railroad Co.* v. *Fulghum*, 87 *Ga.* 263. In that case the principal office of the company was outside of this State, and the cause of action originated out of the State. In was there held that "a railroad corporation, whether *de facto* or *de jure*, and whether foreign or domestic, is subject to suit in this State *in personam* by a citizen thereof, if it owns and operates a railroad in this State which was built by virtue of an act of the legislature authorizing another corporation, chartered in an adjoining State, to build and operate said railroad, and which act declared the corporation so building and operating it subject to suit by citizens of this State in the county in which the road is located. A corporation in the actual use and exercise of all the rights and privileges of another corporation is subject to its burdens, and amongst them to suit for like causes of action for which suits could be maintained against such other corporation were it in possession of the franchises which have been acquired from it or else usurped." Upon this subject see also Baltimore & Ohio R. Co. *v.* Wightman's Adm'r, 29 Gratt. 431, 26 Am. Rep. 384, and Balt. & O. R. Co. *v.* Noell's Adm'r, 32 Gratt. 394, in which it was held that a railroad company incorporated in another State was, by reason of its exercising the powers and franchises of a Virginia corporation whose railroad it was operating as lessee in Virginia, subject to all the duties and obligations imposed upon the Virginia company by its charter, and among them to suit in the same courts as the latter. So far as the reasoning of the Virginia

court is directed to sustaining this view, we think it is conclusive, whatever may be thought of the soundness of the ultimate conclusion that the cases were not removable to the Federal court. These cases were reversed by the Supreme Court of the United States, but solely upon the ground that the railroad company, being a citizen of Maryland, had the right to remove the cases from the State court of Virginia to the Circuit Court of the United States. Railroad Co. *v.* Koontz, *supra.* The decision concedes that the company was suable in the State courts.

It follows, from what has been said, that the defendant was subject to be sued, not only in the same manner as are all other railroad corporations resident in this State, but in the same courts as the particular corporation to whose franchises it succeeded. Under its charter that corporation was subject to be sued in Atlanta. The State of Georgia, in granting the franchises which this defendant was exercising, annexed as one of the conditions of the charter the requirement that "the principal office of said corporation shall be in Atlanta," and further provided that "all notices and legal processes may be served on said corporation as now provided, or may hereafter be provided by law for service on corporations." (Acts 1880–1, p. 256.) At Atlanta, as we have seen, the defendant had an office which was admitted to be one of its principal offices in this State, and at that office and upon the officer in charge service was effected. It matters not what offices it may have had elsewhere, or that the office at Atlanta was subordinate to its office in another State; Atlanta, for all jurisdictional purposes, may still be treated as its principal office under the laws of this State.

We hold, therefore, that it was error to dismiss the case upon the ground that the city court of Atlanta was without jurisdiction of the cause of action.

*Judgment reversed.*