## Castle's Admr. v. Acrogen Coal Company, et al.

(Decided November 28, 1911.)

### Appeal from Johnson Circuit Court.

1. Corporations—Rights and Liabilities of a Foreign Corporation.—A foreign corporation that comes into this State for the purpose of transacting business, subjects itself to all the laws of this State applicable to domestic corporations, and is not entitled to enjoy in this State any privileges, rights or immunities that a domestic corporation cannot enjoy.

2. Same—Foreign Corporations—Conflict of Laws.—Whatever privileges, rights or exemptions may be conferred upon a foreign corporation by the State in which it is organized, they do not attach to it in this State when it comes here for the purpose of transacting business, unless under our laws domestic corporations have the same privileges, rights and immunities.

3. Same—Foreign Corporations—Effect of Dissolution of.—When a foreign corporation that has been engaged in business in this

State has dissolved by the voluntary act of its stockholders, the laws of this State applicable to domestic corporations that have been dissolved in this way continue applicable to it. A foreign corporation may have been dissolved in the manner and form provided by the laws of the State of its organization but it will remain subject to the laws of this State for such period of time and for such purposes as domestic corporations are subject under the laws of this State.

4. Same—Action Against, After Dissolution.—Under section 561 of the Kentucky Statutes, the existence of home corporations, and foreign corporations transacting business in this State, is continued after their dissolution for the purpose of enabling them to wind up their affairs and settle up their business; and for this purpose they may not only sue but be sued in contract or tort in their corporate name and capacity.

5. Same—Process—Service Upon Officer of Dissolved Corporation.— In an action brought after the dissolution of a corporation, upon a demand created before it was dissolved, process may be served upon the same person upon whom process could have been served before the dissolution.

C. B. WHEELER, JNO. P. WELLS for appellant.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Merada Castle was killed in September, 1906, in a coal mine operated in this State by the Acrogen Coal Company, a West Virginia corporation whose chief office and principal place of business was in this State. In August, 1907, his administrator brought this action against the Acrogen Coal Company and the Northeast Coal Company to recover damages for his death, charging that it was caused by the negligence of the Acrogen Coal Company. The Northeast Coal Company was made a defendant because as averred in the petition "the Acrogen Coal Company since the death of Castle sold and transferred to it all of its property, and it thereby became responsible for all of the liabilities of the Acrogen Coal Company." The summons issued against the Acrogen Coal Company was served in Johnson County, Kentucky, upon John C. C. Mayo, Vice President of that company. Mayo moved the court to quash the return on the summons upon him as Vice President of the company, and the Northeast Coal Company entered a general demurrer to the petition. Both the motion of Mayo and the demurrer of the Northeast Coal Company were sustained, and it is from these orders of the court that this appeal is prosecuted.

The lower court was induced to thus dispose of the case because it was of the opinion that as on the 25th day of February, 1907, and before the institution of the action, the Acrogen Coal Company had legally dissolved and terminated its corporate existence by the voluntary act of its stockholders, the authority of its vice president as an officer or agent upon whom a summons could be served had terminated. . And further, that as the Acrogen Coal Company was a West Virginia corporation, the Kentucky courts had no authority to hear or determine its liability for a tort committed prior to its dissolution, as the jurisdiction to hear and determine such causes was confined to the courts of West Virginia. As to the Northeast Coal Company, the court ruled that as it had no jurisdiction of the action against the Acrogen Coal Company, it could not take jurisdiction of the cause of action attempted to be set out against the Northeast Coal Company.

As the petition, looking at it from any standpoint, did not state a cause of action against the Northeast Coal Company, the general demurrer to it on behalf of the company was properly sustained, and so we will not again refer to this feature of the case.

It is insisted by counsel for the appellant that the Acrogen Coal Company was not legally dissolved, but in the view we have of the law of this case it does not seem necessary to take up the question of the legality of the dissolution. If we should assume that it was legally dissolved, it would yet be liable to suit in this State. Section 202 of the Constitution, provides that:

"No corporation organized outside the limits of this State shall be allowed to transact business within the State on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this Commonwealth."

And so, when a foreign corporation comes into this State, as did the Acrogen Coal Company, for the purpose of transacting business within this State, it subjects itself to all of the laws of this State applicable to domestic corporations. A foreign corporation is not entitled to enjoy in this State any privileges or immunities that a domestic corporation can not enjoy. What a domestic corporation can not do, the foreign corporation can not do. Whatever privileges, rights or exemptions may be conferred upon a foreign corporation by the State in which it is organized, they do not

attach to it in this State when it comes here for the purpose of transacting business, unless under our laws domestic corporations have the same privileges, rights and immunities. If by the articles of incorporation in another State or by the laws of that State they have been given powers in excess of those allowed to domestic corporations by the laws of this State, they are of no value here. Each State has the right for itself to prescribe the conditions upon which corporations like the appellee company may transact business within its territory, and we have with much fairness put foreign corporations upon the same footing as domestic corporations. And this rule of equality continues, with the same rights and liabilities that attach to a domestic corporation, not only during the life of the foreign corporation transacting business in this State, but until its affairs have been settled up. When a foreign corporation that has been engaged in business in this State is dissolved by the voluntary act of its stockholders, the laws of this State applicable to domestic corporations that have been dissolved in this way continue applicable to it. The foreign corporation may have been dissolved in the manner and form provided by the laws of the State of its organization, but it will remain subject to the laws of this State for such period of time and for such purposes as domestic corporations are subject to the laws of the State. A foreign corporation can not come into this State and transact business herein, thereby taking up the liabilities as well as the rights of a domestic corporation, and at the will or pleasure of its stockholders surrender its charter and leave the State and thus deprive the State courts of jurisdiction such as they would have over a domestic corporation of like character, or in this manner escape the liabilities or obligations imposed under our laws upon a domestic corporation that had by the voluntary act of its stockholders surrendered its charter.

Let us now see what would be the attitude and condition of a domestic corporation engaged in this State in a business similar to that of the appellee corporation, if it had by the voluntary act of its stockholders surrendered its charter. Section 561 of the Kentucky Statutes provides in part that:

"Any corporation organized under this chapter, may, by the consent in writing of the owners of the majority of its shares of stock, unless otherwise provided

in the articles of incorporation and amendments thereto, close its business and wind up its affairs; and when any corporation expires by the terms of the articles of incorporation, or by the voluntary act of its stockholders, it may thereafter continue to act for the purpose of closing up its business, but for no other purpose; and it shall be the duty of the officers to settle up its affairs and business as speedily as possible; * * * and all debts and demands against the corporation shall be paid in full before the officers receive anything.''

Under this statute the existence of a domestic corporation after its dissolution is continued for the purpose of enabling it to wind up its affairs and settle its business, and for this purpose it may not only sue but be sued in its corporate name and capacity. Its right to bring actions necessary to enable it to settle up its business and its liability in actions that arose against it before its dissolution, are not lost or destroyed by its dissolution. This continuance of its legal existence for the purpose of enabling it to close up its business is necessary to enable the corporation to collect the demands due it as well as to allow its creditors to assert demands against it. If this were not so, then a corporation that became involved in liabilities might escape the payment of its just obligations by merely surrendering its charter, and thus defeat its creditors or greatly hinder and delay them in the collection of their demands. This course of conduct on the part of corporations the law in justice to persons dealing with them does not permit. The person who has a valid claim against a corporation, whether it arises in contract or tort, should not be deprived of the right to prosecute an action for the enforcement of his demand by the action of the stockholders of the corporation in agreeing to its dissolution. The dissolution of a corporation does not extinguish obligations or liabilities due by or to it. The statute has changed the common law rule. Economy B. & L. Ass'n. v. Paris Ice Mfg. Co., 113 Ky., 246; Nelson v. Hubbard, 96 Ala., 238, 17 L. R. A., 378; People v. O'Brien, 111 N. Y., 1, 7 Am. St. Rep., 684; and note; Marion Phosphate Co. v. Perry, 74 Fed. Rep., 425, 33 L. R. A., 252.

If the appellee coal company had been a domestic corporation, and had surrendered its charter when and in the manner the appellee corporation did, we have no doubt that the appellant could under the statute have maintained his action against it; and so, he had the

right to maintain his action against the appellee corporation.

Although it does not influence our decision, it is worthy of notice in this connection that the law of West Virginia, which we find incorporated in the record, provides that:

"When a corporation shall expire or be dissolved, its property and assets shall, under the order and direction of the board of directors then in office, * * * be subjected to the payment of the liabilities of the corporation, and the expense of winding up its affairs; and the surplus, if any, then remaining, to distribution among the stockholders according to their respective interests. And suit may be brought, or defended, the property, real or personal, of the corporation be conveyed or transferred under the common seal or otherwise, and all lawful acts be done in the corporate name, in like manner and with like effect as before such dissolution or expiration; but so far only as shall be necessary or proper for collecting the debts and claims due to the corporation; converting its property and assets into money, prosecuting and protecting its rights, enforcing its liabilities, and paying over and distributing its property and assets, or the proceeds thereof, to those entitled thereto." So that, if the rights and liabilities of the appellee corporation were to be determined by the laws of the State in which it was organized, those laws authorized the appellant to maintain this action against it.

We are also of the opinion that when an action that might have been instituted against a foreign or domestic corporation while it was a going concern is instituted after its dissolution, process in the action may be served upon the same person upon whom the process could be served before the dissolution. It follows from this that as process could have been served upon Mayo before the dissolution, it was proper to serve it on him afterwards; and the court erred in quashing the return on the summons. The question as to how long after its dissolution a corporation remains subject to suit on account of demands that existed against it before the dissolution, is not presented by the record, nor is the question as to the manner in which a creditor who brings and prosecutes to judgment such an action may enforce collection of his judgment.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion.