## Hauger v. International Trading Company.

(Decided June 17, 1919.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Corporations—Statutory Requirements—Doing Business—What Constitutes.—The business referred to in section 571, Kentucky Statutes, making it unlawful for any corporation "to carry on any business" in this state, until it shall have filed in the office of the Secretary of State a statement, signed by its president or secretary, giving the location of its office or offices in this state, and the name or names of its agent or agents thereat, upon whom process can be served, is the business for which the corporation is organized, and does not include the taking of stock subscriptions to procure the capital necessary to carry on the business, so as to render such contracts void if the statute has not been complied with, and the fact that the stock is to be paid for in merchandise does not alter the rule.

2. Reformation of Instruments—Grounds—Mistake—Quantum of Evidence.—A written contract will not be reformed on the ground of mistake unless the mistake be established by full, clear and decisive evidence.

3. Reformation of Instruments—Stock Subscription—Mistake—Sufficiency of Evidence.—In a suit by a corporation to recover a stock subscription, evidence, that the subscription was conditional and that the condition was omitted from the written contract of subscription by mistake, held insufficient to authorize a reformation of the contract of subscription.

4. Corporations—Suits by—Necessity of Formal Resolution of Directors—Abatement and Revival.—Though a corporation may cease to do business, a suit brought by direction of its president, with the acquiescence of its directors, to recover on stock subscriptions for the benefit of creditors, will not be abated on the ground that the suit was not authorized by a formal resolution of the board of directors.

5. Corporations—Statutory Requirements—Subscriptions to Stock.—The Kentucky Constitution provides that a foreign corporation cannot transact business within the state on more favorable conditions than a domestic corporation, and section 543, Kentucky Statutes, requires that at least fifty per cent. of the capital stock of each domestic corporation shall be in good faith subscribed before it shall be authorized "to transact any business with persons other than its stockholders:" Held, that a stockholder cannot defeat his stock subscription on the ground that fifty per cent. of its stock has not been subscribed in good faith, since the sale of the stock to him was a transaction with a stockholder and the statute does not apply.

6. Corporations—Subscription to Stock—Release of Other Stockholders—Defenses.—It is no defense to an action to recover a stock subscription, that another shareholder was released from liability on his stock subscription, without the consent of the defendant, for the release being void, the released shareholder remains bound to make good his subscription.

7. Corporations—Foreign Corporations—Dissolution—Effect—Pleading.—The dissolution of a foreign corporation, having its principal place of business in this state, is not ground for abating an action brought by it to recover on a stock subscription, and an amended answer asking its abatement on that ground was properly rejected.

HOMER W. BATSON, ROBERT W. COBB, GROVER SALES, NICHOLAS T. WHITE and BURNETT, BATSON & CARY for appellant.

BLAKEY, QUIN & LEWIS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The International Trading Company, a corporation, brought this suit against C. D. Hauger to recover damages in the sum of $10,000.00 for breach of a contract of subscription to its capital stock. From a judgment in favor of plaintiff for the amount sued for, the defendant appeals.

Plaintiff was organized under the laws of the state of Delaware, for the purpose of acting as intermediary between the retailer and the manufacturer in the purchase of merchandise; the plan being to secure a number of merchants as stockholders, who would be able to secure their merchandise at lower prices and at the same time participate in the profits of the corporation. On the filing of the articles, the stock was subscribed for by dummies, who subsequently transferred their stock to Ben Howe, the defendant and others. Efforts were made by Howe to sell the stock, but no progress was made until June 16, 1915, when defendant subscribed for $10,000.00 worth of the stock and others subscribed for $3,600.00 worth of stock. Upon the making of these subscriptions, the subscribers organized and elected themselves as directors, who subsequently elected the defendant as vice-president and manager of the clothing department. At the same meeting, a motion was carried which provided that the stock subscribed for by the defendant was to be paid for by the transfer of a stock of ready-made clothing of the value of $10,000.00. At the same meeting, the directors approved a contract by which Howe was given the sole right to dispose of the stock of the company. On July 13, 1915, the stock subscribed by defendant was delivered to him and he executed to the company the following writing:

"July 13, 1915.

"Sold to International Trading Company, Louisville, Ky., one lot of men's ready-made clothing. To be delivered on demand at such time and in such quantities as they may specify, to be priced at my cost in the amount of $10,000.00.

"Received payment July 13, 1915.

"(Signed) C. D. HAUGER."

At the time of defendant's subscription the company had not complied with section 571, Kentucky Statutes, by filing with the Secretary of State a statement giving the location of its offices and the name of its agent upon

whom process could be served, but the statement was filed in the month of September following. The company never succeeded, and at the time of the institution of this proceeding had ceased to do business.

It is first insisted that defendant's contract of subscription is unenforcible, because at the time it was made plaintiff had not complied with section 571, Kentucky Statutes, making it unlawful for any corporation "to carry on any business" in this state, until it shall have filed in the office of the Secretary of State a statement, signed by its president or secretary, giving the location of its office or offices in this state, and the name or names of its agent or agents thereat, upon whom process could be served. In almost all jurisdictions it is held that the word, "business," referred to in similar statutes, means the business for which the corporation was organized, and not the taking of stock subscriptions to procure the capital necessary to carry on the business. Cockburn v. Kinsley, 135 Pac. Reporter, 1116 (Colo.); Southworth v. Morgan, 128 N. Y. Supp. 598; First National Bank v. Leeper, 97 S. W. 636 (Mo.); Bartlett v. Chouteau, 18 Kansas 369; Wildwood Pavilion Co. v. Hamilton, 15 Pa. Super. Ct. 389; (See vol. 5 Decennial Digest, p. 1460-642 (2); Payson v. Withers, Fed. Cas. No. 10864, 5 Biss. 269; Union Trust Co. v. Sickles, 109 N. Y. Supp. 262; Clark v. Kansas P. Co., 129 S. W. 466 (Mo.); In re Alabama & C. R. Co., 1st Fed. Cas. 271; Green v. Chicago, Burlington & Quincy R. Co., 205 U. S. 530; People v. C. I. & L. R. Co., 223 Ill. 581; Brown v. Guaranty Savings & Loan Assn., 102 S. W. 138 (Tex.); Mandell v. Swan Land Co., 154 Ill. 187 (s. c. 187 L. R. A. 313); Boardman v. S. S. McClure, 123 Federal 614; Bradbury v. Waukeegan Mining Co., 133 Ill. Ap. 600; Board v. Union Pub. Co., 71 Ala. 60; Blodgett v. Lanyon Zinc Co., 120 Federal 893; Caesar v. Cappell, 83 Federal 403-412; Galena Mining Co. v. Frazier, 20 Pa. Super. Ct. 394; Hoevel v. Hoevel, 153 N. Y. Supp. 35; Morgan v. White, 101 Ind. 413; Smythe v. Ft. Worth Glass Co., 142 S. W. 1157 (Tex.); Toledo Traction Co. v. Smith, 205 Fed. 654; Philip Ryan Lumber Co. v. Ball, 177 S. W. 226; First National Bank v. Leeper, 121 Mo. Ap. 688; 97 S. W. 636. We concur in this view of the question and are also of the opinion that the mere fact that the stock was to be paid for in merchandise instead of money did not change the transac-

tion, so as to constitute a carrying on of business within the meaning of the statute.

Another contention is that defendant's subscription was conditional and that, by mistake of the draftsman, the contract respecting the subscription did not express the true agreement between the parties. On this question the defendant testified that he was in the clothing business, and that he agreed with Mr. Howe to take $10,000.00 worth of stock, payable in merchandise, only in the event that the company secured orders for the clothing. While Mr. Howe does not testify that such was the actual agreement, he does say that it was never intended to call on defendant for the clothing until the clothing was sold. These two witnesses also say that when the meeting was held, at which the subscriptions were taken, the conditional character of the subscription was explained to those present. There was further testimony to the effect that the company had no place to store the clothing. On the contrary Messrs. Moody, Louckes and Woolfolk, who were present at the meeting when the subscription was taken, testified that no mention was made of the fact that defendant's subscription was conditional on the company's getting the necessary orders for the clothing. They further say that when defendant was called on to pay his subscription, he never once claimed that the subscription was conditional. In addition to this, both the contract of subscription and the subsequent bill of sale, executed upon the delivery of the stock, show that the contract of subscription was absolute and not conditional. We have frequently held that a written contract will not be reformed on the ground of mistake, unless the mistake be established by full, clear and decisive evidence. Lamastus v. Morgan's Committee, 178 Ky. 805, 200 S. W. 32; Coleman v. Illinois Life Insurance Co., 82 S. W. 616, 26 Ky. Law Rep. 900; Ison v. Sanders, 163 Ky. 605, 174 S. W. 505. Viewing the case in the light of this rule, we conclude that the evidence did not come up to the required standard.

The point is also made that plaintiff had ceased to do business, and as the purpose of the action was to recover the stock subscription for the benefit of creditors, the president, in the absence of action by the board of directors, was without authority to direct that the suit

be brought. Not only is the right of a corporation to sue a necessary incident to its creation, but its right to recover on stock subscriptions is supported not only by statute, but by the principles of the common law. Hence, when such a suit is brought by direction of the president, with the acquiescence of the directors, the mere fact that the suit was not authorized by a formal resolution of the board of directors will afford no ground for abatement.

It is further urged that defendant is not liable on his stock subscription for the following reasons: Plaintiff had an authorized capital stock of $5,000,000.00. When it came to Kentucky for the purpose of doing business, only a small portion of this stock had been subscribed. Under our Constitution, a foreign corporation cannot transact business within the state on more favorable conditions than a domestic corporation, and section 543, Kentucky Statutes, requires that at least fifty per cent. of the capital stock of each domestic corporation shall be in good faith subscribed before it shall be authorized "to transact any business with persons other than its stockholders." We find no merit in this contention. The statute merely withholds authority to transact any business with persons other than the stockholders of a corporation before fifty per cent of the capital stock is subscribed in good faith. Here, the transaction was with a stockholder, and the statute does not apply.

It appears that a man by the name of Eiler traded his grocery store for a certain amount of stock. Plaintiff not having the necessary funds to conduct the grocery store, the contract of subscription was cancelled. It is insisted for the defendant that he was ignorant of the cancellation of Eiler's stock, and that plaintiff's action in releasing Eiler was unauthorized and had the effect of releasing defendant from his stock subscription. This position is not tenable, for it is the rule that it is no defense to an action to recover a stock subscription that another shareholder was released from liability on his stock subscription, without the consent of the defendant, for the release being void, the released shareholder remains bound to make good his subscription. Dorman v. Jacksonville, etc., Plank Road Co., 7 Fla. 265; Chouteau Ins. Co. v. Floyd, 74 Mo. 286; Upton v. Tribilcock, 91 U. S. 45, 23 L. ed. 203.

Lastly, it is insisted that the chancellor erred in refusing to permit the defendant to file an amended answer, pleading in substance that plaintiff's charter had been revoked by the state of Delaware, and asking an abatement of the action on that ground. The common law rule, that the debts and liabilities of a corporation are extinguished by its dissolution, has been changed by statute, which applies to domestic and also to foreign corporations having their principal place of business in this state, and continue their legal existence for the purpose of winding up their affairs. Hence, plaintiff's dissolution was not ground for abating the action, and the amended answer was properly rejected. Section 561, Kentucky Statutes; Castle's Admr. v. Acrogen Coal Co., 145 Ky. 591, 140 S. W. 1034.

Judgment affirmed.