TRUST COMPANY OF GEORGIA, executor, etc., *et al. v.* THE MORTGAGE-BOND COMPANY OF NEW YORK, for use, etc.

No. 15934. JANUARY 17, 1948. ADHERED TO ON REHEARING, MARCH 20, 1948.

*Poole, Pearce & Hall, Margaret Hills, James A. Branch,* and *Thomas B. Branch Jr.,* for plaintiffs in error.

*T. M. Smith* and *MacDougald, Troutman, Sams & Branch,* contra.

BELL, Justice. ■ The principal question for determination is whether section 36 of the Corporation Act of 1938 applies to foreign as well as domestic corporations. We think that it applies by its terms to Georgia corporations only, and since there is nothing in the record to indicate that the plaintiff corporation ever at any time engaged in business in Georgia, let it be understood at the outset that, in so far as this section is concerned, the question is limited to a determination of the meaning of its own particular provisions, regardless of whether the plaintiff might have become either subject to its provisions or entitled to rights thereunder by reason of *other and additional* principles, if the plaintiff had ever done business in this State. See *Williams* v. *East Tenn., Va. & Ga. Ry. Co.,* 90 *Ga.* 519, 522 (16 S. E. 303).

The entire act consists of 46 sections, covering approximately 33 pages in the published volume. The caption, so far as here material, is as follows: "An Act authorizing the chartering and empowering of corporations, and amending, revising and perfecting the present corporation laws of the State; . . . and for other purposes."

While only section 36 is directly involved in the instant case, we will here quote it in its order along with several other sections.

"Section 35. If it should be deemed desirable in the judgment of the Board of Directors or for the benefit of any corporation incorporated or reincorporated under this Act, that it shall be dissolved, the Board of Directors may adopt a resolution to that effect and call a meeting of the stockholders having voting powers on a proposal to dissolve and take action on the resolution so adopted. Such meeting of the stockholders shall be held upon notice given in the manner hereinbefore provided and if at such

meeting or any adjournment thereof the holders of record of stock entitled to exercise two-thirds of all the voting power determine that the dissolution shall take place, a petition with a certified copy of said resolution attached thereto shall be filed in the manner hereinbefore provided for the amendment of the charter and an order obtained . . from the Superior Court or the Judge thereof dissolving said corporation in the same manner hereinbefore provided for the amendment of a charter to a corporation, and the same shall be advertised in like manner.

"Section 36. All corporations, whether they expire by their own limitations or are otherwise dissolved, shall nevertheless be continued for the term of three years and until final disposition of all suits begun within that time from such expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them and enabling them gradually to settle and close their business, to dispose of and convey their property and to divide their assets, but not for the purpose of continuing the business for which the said corporation shall have been established.

"Section 37. Upon the dissolution of any corporation under the provisions of this Act or upon the expiration of its corporate existence limited by its charter, the Directors or their survivors shall be Trustees thereof with full power to settle the affairs, collect the outstanding debts, sell and convey the property, real and personal, and divide the monies and other property among the stockholders, after paying its obligations and liabilities or providing therefor.

"Section 38. The persons constituted Trustees, as aforesaid, shall have authority to sue for and recover the aforesaid debts and property in the name of the Trustees of such corporation, describing it by its corporate name, and shall be suable by the same name for the debts owing by such corporation at the time of its dissolution and shall be responsible for the debts of the dissolved corporation to the extent of the monies and properties of such corporation which shall come into their hands or possession. Such Trustees may act by a majority thereof. Any vacancies in the office of Trustee may be filled by the Judge of the Superior Court instanter upon notice of any party at interest, including the Trustees.

"Section 39. When any corporation incorporated or reincorporated under this Act shall be dissolved or cease to exist in any manner whatever, the Judge of the Superior Court, of the county in which its principal place of business is located, on application of any creditor or stockholder at any time, may either continue such directors as Trustees, as aforesaid, or, upon equitable cause being shown therefor, appoint one or more persons the Receivers of and for such corporation to take charge of the assets and effects thereof, and collect the debts and property due and belonging to the corporation with power to prosecute and defend in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid and to appoint an agent or agents under them and to do all other acts which might be done by such corporation if in being that may be necessary for the final settlement of unfinished business of the corporation, and the powers of such trustees or receivers may be continued as long as the Superior Court shall think necessary for the purposes aforesaid.

"The said Trustees or receivers, after payment of all allowances, expenses and costs and the satisfaction of all special and general liens upon the funds of the corporation to the extent of their lawful priority, shall pay the other debts due from the corporation if the funds in their hands shall be sufficient therefor, and, if not, they shall distribute the same ratably among all the creditors who shall prove their debts in the manner that shall be directed by an Order of the Superior Court for that purpose; and, if there shall be any balance remaining after the payment of such debts and necessary expenses, they shall distribute and pay the same to and among those who shall be justly entitled thereto as having been stockholders of the corporation or their legal representatives.

"Section 40. If any corporation created under any law of this or any other State becomes dissolved by the expiration of its charter or otherwise before final judgment obtained in any action pending in any court of this State against such corporation, the said action shall not abate by reason thereof but, the dissolution of such corporation being suggested of record and the names of the trustees or receivers of such corporation being

entered upon the record and notice thereof served upon said trustees or receivers, or, if such service be impracticable, upon the counsel of record in such case, the said action shall proceed to final judgment against the said trustees or receivers by the name of the corporation." Ga. L. Ex. Sess., 1937-38, pp. 214, 242-244.

This is the first case in which the courts of this State have had occasion to consider section 36. Similar statutes have been enacted in many other States, and it has been held by some courts that they include foreign corporations, and by others that they apply to domestic corporations only. The conclusions of the courts on this and related questions have been summed up in Corpus Juris Secundum as follows:

"Domestic statutes continuing the existence of dissolved foreign corporations for the purpose of prosecuting and defending actions after they have been dissolved are effective to render valid judgments obtained in the state, so far as property in the state belonging to the foreign corporation is concerned. It has been held, however, that other states need not, and will not, give such judgments the effect of reaching corporate assets within their boundaries. Statutes continuing the existence of domestic corporations after dissolution for the purpose of permitting suits by and against the corporation have in some jurisdictions, although not in others, been applied to foreign corporations so as to permit the institution of suit and recovery of judgment by or against such corporations after their dissolution; and, as appears in Abatement and Revival, § 102 b (2) (b) [1 C. J. S. 144], a similar result has been reached in determining whether such statutes abate pending actions." 20 C. J. S. 131, § 1902.

In American Jurisprudence, it is stated: "In most jurisdictions, . . . statutes have been enacted providing that after dissolution corporations shall continue to exist for the purpose of prosecuting and defending suits. Generally, statutes of this character enacted by the state of the domicile of the corporation are given an extraterritorial effect and are regarded as controlling in other states in which the corporation is sued or sues. In other words, if the law of the domicile permits the prosecution or defense of actions by corporations after dissolution, pend-

ing suits in other jurisdictions will not abate. There are, however, some early authorities in which extraterritorial operation is denied to a statute of the domicile preventing abatement of actions, the ground of decision being that such statute has relation to remedies. In some courts, the general doctrine is qualified pro tanto by the rule that the form of the action and the method of procedure are matters of practice which are fixed and governed by the laws of the state in which the action is instituted.

"On the other hand, according to the majority of the courts, general statutes of the state in which a foreign corporation does business, extending the existence of dissolved corporations for winding up purposes, do not apply to enable the foreign corporation to sue or be sued there after its dissolution in the state of the domicile, even though the foreign corporation has its principal place of business in that state, unless the scope of such statutes is extended to foreign corporations by explicit words, contained either in the statutes themselves, or in some other statute. Whether such an extension should be inferred is a matter to be determined from the language used by the legislature. In some instances, local statutes preventing abatement of actions against corporations whose existence is terminated have been treated as controlling with regard to foreign corporations, apparently without reference to whether they are expressly made applicable to such corporations." 23 Am. Jur. 460-61, § 475. For similar statements, see 2 Beale "The Conflict of Laws," 742, 744; 16 Fletcher Cyc. Corp. 930, chapter 65, sections 8166, 8167. Annotations may also be found in 47 A. L. R. 1564 and 97 A. L. R. 502, and in 17 Ann. Cas. 227, following the decision in Commercial Loan Co. etc. v. Mallers, reported also in 242 Ill. 50 (89 N. E. 661, 134 Am. St. R. 306). Among the decisions holding that such continuation statutes do not apply to foreign corporations, see Marion Phosphate Co. v. Perry, 74 Fed. 425 (33 L. R. A. 252) ; Olds v. City Trust, Safe-Deposit & Surety Co., 185 Mass. 500 (70 N. E. 1022, 102 Am. St. R. 356) ; Ex parte Davis 230 Ala. 668 (162 So. 306) ; Gulledge Bros. Lumber Co. v. Wenatchee Land Co., 115 Minn. 491 (132 N. W. 992). In each of these cases except the Minnesota case, it appeared that the foreign corporation had done business in the

State in which the suit (against it) was instituted, and notwithstanding that fact it was held that the statute did not apply to such foreign corporation, while in the Minnesota case (suit by the corporation), the decision was silent as to whether the corporation had or had not done business in the State.

There is a similar statute in Mississippi, and in Rawlings *v.* American Oil Co., 173 Miss 683 (161 So. 851), it was held that the statute applied to foreign corporations doing business in the State, as well as domestic corporations. It appeared in that case that the subject corporation had been doing business in the State; also that the judgment in question was obtained in a suit against it, and not in a suit which the corporation itself had brought, after its dissolution. Compare Clark *v.* Willard, 292 U. S. 112 (54 Sup. Ct. 615, 78 L. ed. 1160).

In the briefs filed in the instant case, there is some discussion as to whether a distinction should be made between suits *against* foreign corporations and suits *by* them, and in the brief of counsel for the defendants in certiorari the following cases have been cited as falling within the latter class and as supporting the view that our statute (section 36 supra) would save the present action from abatement: Swing *v.* Bentley & Gerwig Furniture Co., 45 W. Va. 283 (31 S. E. 925); Swing *v.* Parkersburg Veneer & Panel Co., 45 W. Va. 288 (31 S. E. 926); Hauger *v.* International Trading Co., 184 Ky. 794 (214 S. W. 438). In each of the West Virginia cases, suit was brought by Swing as trustee or receiver of a corporation of Ohio, but in the first of these two cases, in which the main opinion was written, one of the statutes on which the court based its decision expressly included corporations "chartered by another state." See West Virginia Code of 1891, chapter 53, section 58. So, these two cases can be of little if any help in solving the present question. The Hauger case, supra (Kentucky), was also a *suit* by a corporation. But it appeared that the corporation had done business in the State of Kentucky, although it had ceased doing business at the time the suit was instituted. The court held in effect that the revocation of its charter by the State of its creation did not abate the action, referring to a statute of Kentucky similar to ours, and stating that it "applies to domestic, and also to for-

eign, corporations having their principal place of business in this state." The court also cited as authority Castle's administrator *v.* Acrogen Coal Co., 145 Ky. 591 (140 S. W. 1034), in which it was stated: "A foreign corporation cannot come into this state and transact business herein, thereby taking up the liabilities as well as the rights of a domestic corporation, and at the will or pleasure of its stockholders surrender its charter and leave the state and thus deprive the state courts of jurisdiction such as they would have over a domestic corporation of like character." This statement shows the reason underlying the ruling in the Hauger case, although it was made in a case against a corporation, while the Hauger case itself was a suit by the corporation. Nevertheless, in each of these decisions, it appears that the statute was held applicable to foreign corporations only because they were doing business within the State. For this reason, the Hauger case is also distinguished by its facts from the instant case, and it is so distinguished regardless of whether it correctly construed the statute as authorizing an action by as well as against a dissolved foreign corporation. No other case, besides the two West Virginia cases and the last mentioned Kentucky case, was cited by counsel for the defendants in certiorari, in which the action was brought by or in behalf of a dissolved foreign corporation.

Our Code, § 22-1502, provides that "No foreign corporation shall exercise within this State any corporate powers or privileges which by the Constitution or laws of Georgia are denied or prohibited to corporations created by this State, or the exercise of which is contrary to the public policy of this State, anything in the charter or corporate powers of the foreign corporation to the contrary notwithstanding." In harmony with this provision are several decisions of this court, holding that where a foreign corporation does come into this State and engages in business here, it becomes a virtual inhabitant or resident of the State of Georgia, and is therefore subject to our laws to the same extent as domestic corporations. See, in this connection, *City Fire Insurance Co.* v. *Carrugi,* 41 *Ga.* 660; *Williams* v. *East Tenn., Va. & Ga. Ry. Co.,* 90 *Ga.* 519 (supra); *Hirsch* v. *Shepherd Lumber Co.,* 194 *Ga.* 113 (20 S. E. 2d, 575). Thus, the

theory, or principal theory, of these decisions was not that the statutes therein considered were applicable to a foreign corporation by their own self-contained meaning, but was, on the other hand, that the corporations, through their own election, *made themselves applicable* or subject to such statutes, in that by doing business in this State, they placed themselves in the same situation as domestic corporations; in other words, that a statute which is applicable by its own terms only to Georgia corporations may in such a case be applied to a foreign corporation, *not as a foreign corporation,* but as a resident or domestic corporation, because of its having voluntarily adopted residence here for the purpose of doing business. Yet, since the present record does not show anything as to whether this foreign corporation was ever at any time engaged in business in Georgia, no question is now presented as to whether the provisions of section 36, as quoted supra, could, under such theory, *be* applied so as to authorize suits either by or against a dissolved foreign corporation which had done business in Georgia. Hence, as hereinbefore indicated, nothing said in this opinion is intended as a decision upon either branch of such question. But see, in this connection, 20 C. J. S. 26, § 1807; 23 Am. Jur. 95-97, § 91.

The plaintiff corporation did, of course, institute the present proceeding to revive a judgment, and it also brought the original action in which the judgment was obtained, but merely engaging in litigation would not amount to doing business in this State, for either of the purposes just indicated. 20 C. J. S. 52, § 1836; 23 Am. Jur. 349, § 366.

We agree with counsel for the defendants in certiorari that the answer to the present question depends solely upon the intention of the General Assembly as expressed or implied in the section under consideration, there being no attack whatever upon its constitutionality, and accordingly, ascertainment of such intention will be the sole object of this inquiry, so far as it relates to that section. Needless to add that, if the statute had been attacked as being unconstitutional upon any ground, the Court of Appeals would not have had jurisdiction of the writ of error, but it should have been returned directly to this court.

In 20 C. J. S. 28, § 1808, it is stated: "Whether or not the

term 'corporation' when used in a statute applies to foreign corporations operating within the state depends largely upon the subject-matter of the statute, its policy, and the context in which the term is employed. The word 'corporation,' as used in statutes, generally applies to a foreign corporation, when there is nothing in the words of the statute itself which would indicate an intention on the part of the legislature to limit its effect to domestic corporations, or where there are no sufficient considerations of local or state policy from which can be inferred a motive on the part of the legislature so to restrict its operation; a fortiori, the term will be so applied·where the statute manifests the intent that it shall do so. On the other hand, statutes referring to corporations will be construed as applying only to domestic corporations where such seems to be their intent." This accords with the ruling of this court in *Torrance* v. *McDougald*, 12 *Ga.* 526 (4), that "General words in a statute are to receive a general construction, unless there be something in it to restrain them."

The word "all," standing alone, is a completely comprehensive term, and therefore the phrase "all corporations," would seem to include foreign corporations, if nothing else should be considered. But the words here are contained in a *statute,* and are therefore not to be treated as mere abstract terms. The cardinal rule for the construction of statutes is to ascertain the intention of the General Assembly in passing the law, and considering this section and its legislative environs, we do not think that it was intended to be so comprehensive as to include every corporation that has been or may be chartered anywhere in the world. The act itself destroys universality by expressly excluding certain classes of corporations: Section 1 excepts banking, insurance, and other corporations enumerated, while section 44a added to these exceptions electric-membership corporations. But there are other and additional reasons which in our opinion would "restrain" the general expression "all corporations."

One thing that should be kept in mind is that this is a Georgia statute, enacted by the Georgia legislature, and we would naturally expect, nothing to the contrary appearing, that any such statute would be intended to apply only to Georgia matters and

affairs. It is true that the General Assembly did not hesitate to deal with foreign corporations in express or clearly descriptive terms in several other sections of this act. For instance, see sections 18 to 23 inclusive, providing for merger of "any two or more corporations, incorporated either under the laws of this State or under the laws of any other State or country, except banks and trust companies"; also section 40, as quoted supra, referring to "any corporation created under any law of this or any other State." It also appears to be true, as pointed out by counsel for the defendants in certiorari, that unless section 36 does apply to foreign corporations, then there is no provision whatever in the act for suit by a dissolved foreign corporation. While these features of the act may be considered as legislative circumstances favoring the contention that section 36 was intended broadly to include all corporations other than those expressly excepted, they are circumstances only, and are not controlling. We do not know of any obligation of the State of Georgia to provide for suits by dissolved corporations of other States.

It may also be observed that, while several other sections do, as above stated, contain provisions clearly referring to corporations of other States, section 36 entirely omits such specific terms, and this would seem to be a material circumstance tending to show limited intent, since it would have been so easy to insert some descriptive phrase specifically including foreign corporations, as was done in other sections, if such was the intention of the General Assembly.

Perhaps the most important matter to be considered in the construction of any statute is the purpose for which it was enacted, if such can be ascertained. Compare *Hirsch* v. *Shepherd Lumber Corp.*, 194 *Ga.* 113 (supra). Section 36 itself states the purpose of the continued-existence provision, in the following clear and unmistakable language: "for the purpose of prosecuting and defending suits by or against them and enabling them gradually to settle and close their business, to dispose of any [and?] convey their property and to divide their assets, but not for the purpose of continuing the business for which the said corporation shall have been established." This language is also

broad, but what concern would Georgia have in enabling a foreign corporation to close its business and divide its assets, unless it is doing business in Georgia, or has property in this State that should be made subject to Georgia creditors? Also, how could it *be sued* in this State? If we are to say the phrase, "all corporations," includes foreign corporations, then it would become absolutely necessary to read into the statute either the phrase "doing business in this State" or some other language limiting the expressions "their business" and "their assets" to business and assets within the State of Georgia. In other words, we cannot take this section and construe it as the defendants in certiorari contend it should be construed, that is, to include foreign corporations, without supplying qualifying words such as would limit the expressed purpose of the act to matters within the jurisdiction of this State. Compare *Vicksburg, Shreveport &c. Ry. Co.* v. *DeBow*, 148 *Ga.* 738 (98 S. E. 381); *Southeastern Distributing Co.* v. *Nordyke & Marmon Co.*, 159 *Ga.* 150 (125 S. E. 171). On the other hand, if the section is construed as applying only to domestic corporations, then there would be nothing to add by implication. This it seems would be the more reasonable interpretation.

Again, as we have shown above, this section follows immediately another section which provides for voluntary dissolution of "any corporation incorporated or reincorporated *under this act*" (italics ours); and immediately precedes a section providing for trustees for settling the affairs of any corporation which is dissolved "under the provisions of this act or upon the expiration of its corporate existence limited by its charter." See sections 35 and 37. Other sections, both immediately preceding and immediately following it, purport to deal only with Georgia corporations, unless it may be otherwise as to section 34, relating to liability for unsubscribed stock, which merely codifies a common-law principle that was enunciated by this court in *Burns* v. *Beck & Gregg Hardware Co.*, 83 *Ga.* 471 (1) (10 S. E. 121). See *Howard* v. *Long*, 142 *Ga.* 789, 791 (83 S. E. 852); Code, § 22-707. We thus see that section 36 is set in the midst of other sections dealing mainly if not altogether with Georgia corporations, and this also is a circumstance to be considered. *Noscitur a sociis.*

Counsel for the defendants in certiorari rely on the italicized phrase in *Venable Brothers* v. *Southern Granite Co.*, 135 *Ga.* 508, 510 (69 S. E. 822, 32 L. R. A. (N. S.) 446). "It has been held in many cases that, if a corporation becomes extinct pending a suit to which it is a party, the suit thereby abates as to such corporation, and any judgment thereafter rendered against it is a nullity, unless some provision is made for the further prosecution of the suit *by the laws of the State in which the suit is pending.*" (Italics supplied.) The view that section 36, supra, does not include foreign corporations is not in any degree contrary to such statement as to the State in which such laws may or should be enacted, for as we have indicated above, the only question here is whether section 36 does apply to foreign corporations, regardless of whether it should or should not be treated as a *procedural* statute within the suggestion implied in such statement. After the decision in the *Venable* case in 1910, the General Assembly did (in 1918) pass an act relating to pending actions, and providing also for institution of suits against dissolved corporations, the provisions of which were contained in the official Code of 1933 as follows: "The dissolution of a corporation either as a result of the expiration of its charter, or for any other cause, shall not bring about its total extinction nor operate to extinguish any demand or cause of action against it in favor of any person whomsoever, whether arising from contract or tort, nor shall such dissolution work the abatement of any suit pending against it at the time of such dissolution, but all such pending suits may be prosecuted and enforced to a conclusion as though such corporation was still undissolved." Code, § 22-1210. "Suits for the enforcement of any demand or cause of action due by such corporation may to a like extent be instituted and enforced against it in any court having jurisdiction thereof at the time of its dissolution, and service thereon may be perfected either by seizure of the property of such corporation, by any form of legal process, or by serving with process issued upon said suits any person who, as an agent or officer of such corporation, was subject to be served as its officer or agent at the time of such dissolution." § 22-1211. As will be seen, the act of 1918 as quoted provided for suits only as *against* corporations.

In *Manufacturing Lumbermen's Underwriters* v. *South Georgia Railway Co.*, 57 *Ga. App.* 699 (196 S. E. 244), it was held in effect that section 22-1210 applied to foreign corporations. We need not here either approve or disapprove the ruling made in that case. However, while it is true that the act of 1918, like section 36, contained no specific language to indicate whether it was intended to include foreign corporations, neither was there any specific statement *as to the purpose* for which it was enacted, as in section 36, the purpose clause in which has been quoted supra. It may be further noticed that the decision just cited showed that the corporation therein referred to was a non-resident insurance company doing business in this State.

Counsel for the defendants in certiorari rely also upon *Byers* v. *Black Motor Co.*, 65 *Ga. App.* 773 (16 S. E. 2d, 478), holding that, where judgment was rendered against an existing corporation, an execution based on such judgment was properly issued in the name of the corporation as defendant, although the defendant had been dissolved at the time execution was issued. That decision was evidently based upon the statutory provision that all executions must follow the judgments upon which they issue and describe the parties thereto as described in such judgment (Code, § 39-104, Civil Code of 1910, § 6022, as quoted and applied in *Mims* v. *McKenzie*, 22 *Ga. App.* 571 (96 S. E. 441), the latter decision having been cited for the ruling in the *Byers* case).

The Court of Appeals, however, did not in the present case place its decision solely upon section 36, but cited and discussed provisions of the act of 1918 (Code, § 22-1210), also section 40 of the act of 1938. Several decisions applying the act of 1918 were mentioned and discussed, as supporting the conclusion that the present action did not abate on dissolution of the plaintiff corporation. With all deference to the views as thus expressed by that court, we are of the opinion that the present case must stand or fall by the terms of section 36 in so far as our corporation laws are concerned. Nor does the instant case involve any question as to whether the plaintiff was a de facto corporation. Compare *Huey* v. *First National Bank of Fitzgerald*, 177 *Ga.* 64 (169 S. E. 491).

It may be that our present corporation laws are still imperfect with respect to remedies both for and against foreign corporations. Nevertheless, after a careful consideration of section 36, we are of the opinion it was not intended by the General Assembly to apply to foreign corporations.

■ But still other laws remain for consideration, to wit, the statutes relating to proceedings for revival of dormant judgments, also, the law as to suit by a nominal plaintiff for the use of another.

"When any judgment obtained in any court of this State shall become dormant, the same may be renewed by an action or by scire facias, at the option of the plaintiff, within three years from the time it became dormant." Code, § 110-1003. "Scire facias to revive a judgment is not an original action, but the continuation of the suit in which the judgment was obtained." § 110-1005. "The scire facias, when the judgment has been transferred, shall issue in the name of the original plaintiff for the use of the transferee." § 110-1009. The proceeding in this case was by scire facias, and therefore it did not constitute a new action, but was a continuation of the suit in which the judgment was obtained. Yet it was brought in the name of the original plaintiff in whose favor the judgment was rendered, as was proper under the statute, and there was no other party plaintiff in the proceeding. Although the petition as amended prayed that the action be allowed to proceed in the name of the plaintiff for the use of another corporation as the holder and owner of the notes on which the original judgment was obtained, the fact that the proceeding was thus expressly brought for the use of another did not prevent it from abating when the only party in whose name it was brought was a corporation and that corporation ceased to exist as a legal entity, pending the proceeding. *Joiner* v. *Singletary*, 106 *Ga.* 257 (2) (32 S. E. 90); *Norcross Butter &c. Mfg. Co.* v. *Summerour*, 114 *Ga.* 156 (3) (39 S. E. 870); *National Ben Franklin Fire Ins. Co.* v. *McGann*, 170 *Ga.* 573 (2) (153 S. E. 362).

The instant case differs on its facts from *Chapman* v. *Taliaferro*, 1 *Ga. App.* 235 (58 S. E. 128), where the proceeding to revive the judgment was actually brought in the name of the

transferees and not in the name of the original plaintiff. There was no demurrer or other attack upon the proceeding before the judgment of revival was obtained. In these circumstances, the Court of Appeals simply held that such judgment of revival was not void and subject to collateral attack. In the instant case, only the notes and not the judgment had been transferred, and the transfer was made even before the judgment was obtained. Furthermore, in the present case, the petition for revival as amended was attacked *in limine* upon the ground that it showed upon its face that the corporate plaintiff had ceased to exist as a legal entity pending the action. Nor does *Franklin* v. *Mobley, 73 Ga. App.* 245 (36 S. E. 2d, 173), support the conclusion that· the instant proceeding did not abate on dissolution of the corporate plaintiff. In that case, the equitable owners of the execution merely sought to have the execution proceed for their use in the name of the party in whose favor it was issued. The Court of Appeals held that they were entitled to such relief, and so held, notwithstanding the execution was issued in the name of Mobley, Superintendent of Banks, whose tenure of office had terminated long before the execution was levied. Compare *Mims.* v. *McKenzie,* 22 *Ga. App.* 571 (supra) and *Byers* v. *Black Motor Co.,* 65 *Ga. App.* 773 (supra).

In the instant case, the petition as amended did not plead any law of the State of New York, and no question as to comity or as to full faith and credit appears to be involved. We have examined all of the cases that have been cited by counsel on either side, but it would too greatly prolong this opinion to refer in particular to each of them. We cannot escape the conclusion that the proceeding to revive the judgment abated on dissolution of the corporate plaintiff, and that the Court of Appeals therefore erred in reversing the judgment of the trial court dismissing the petition.

*Judgment reversed. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.*